ADELIA WILLIS DALE, BY AND THROUGH HER AGENT AND ATTORNEY IN FACT, WHEELER DALE, v. CITY OF MORGANTON, NORTH CAROLINA.

(Filed 20 June, 1967.)

**1. Appeal and Error § 50—**

On appeal from an order granting or refusing an interlocutory injunction, the Supreme Court is not bound by the findings of fact of the trial court, but may review the evidence and find facts for itself.

**2. Municipal Corporations § 4—**

A municipality, in the exercise of the proprietary function of furnishing electricity to consumers, is under the common law duty not to discriminate in service or rates, notwithstanding that it is exempt from regulation by the Utilities Commission, G.S. 62-3(23), and may not lawfully refuse electrical service because of a controversy with a consumer concerning a matter which is not related to the service sought, and therefore may not refuse service in order to coerce the consumer to comply with the municipality's police regulations enacted in the exercise of a governmental function in regard to the safety of the consumer's house.

**3. Same—**

Since a city engaged in the proprietary function of supplying electricity to consumers is liable for injuries due to its negligence, a city may, in order to obviate possible future liability, refuse to render service to a customer when its inspection of the customer's house reveals that the electrical wiring therein is in a dangerous condition.

**4. Municipal Corporations § 24—**

Where a municipality is given express legislative authority in regard to a matter, an ordinance enacted pursuant to such power need not refer to the statute.

**5. Municipal Corporations § 2—**

Chapter 1009 of the Session Laws of 1959 has remained in full force and effect since July 1959, G.S. 160-453.23, notwithstanding its provision that prior laws governing annexation should remain in force to 1 July 1962.

**6. Same—**

The introduction of an annexation ordinance into evidence, which ordinance recites compliance with all procedures made prerequisite to annexation, establishes *prima facie* substantial compliance with the requirements and provisions of the statute, and a party attacking the validity of the

ordinance who fails to carry the burden of showing by competent evidence failure of the municipality to comply with any statutory requirement, must fail.

**7. Same—**

The requirement of G.S. 160-453.19 that a map of annexed territory, together with a certified copy of the ordinance, be recorded in the office of the register of deeds and in the office of the Secretary of State, is not a condition precedent to effective annexation of territory by a municipality, but is a duty to be performed after annexation is complete.

**8. Same—**

The failure of a city to extend sewer lines and other services into an annexed area pursuant to the plan of annexation is not a condition precedent to annexation, and the remedy of a property owner for failure of the city to provide him with such services is solely by suit for *mandamus* to compel the city to provide such services. G.S. 160-453.17(8).

**9. Municipal Corporations § 24—**

A municipal corporation has no inherent police power, and statutes conferring such powers are to be strictly construed.

**10. Municipal Corporations § 25—**

Where a municipal code substantially incorporates in its ordinance the conditions specified in G.S. 160-182 as prerequisite to the closing of a dwelling house unfit for human habitation, its ordinance adopting the code is within the statutory power conferred, and it is not necessary to determine whether the municipality had any other authority to enact such police regulation.

**11. Municipal Corporations § 24—**

Where an ordinance adopting a building code specifies that, in the event of conflict between the building code adopted and the provisions of the ordinance, the ordinance should control, procedural requirements in the ordinance and the applicable statute must be substantially complied with in order to confer upon the municipality authority to forbid the occupancy of a dwelling, and any wider latitude delegated by the building code is immaterial.

**12. Same—**

Where a municipal building code provides that the occupant of a dwelling should be given notice and an opportunity to be heard upon the question of the fitness of the dwelling for human habitation before the municipality should have the right to prevent occupancy of the house as a dwelling, a notice posted on the dwelling stating that its occupancy had been prohibited by the municipal building official, without compliance with procedural prerequisites, is void and of no legal effect, and the city should be required to remove such notice until the requisite procedure has been complied with.

**13. Appeal and Error § 49—**

A conclusion of law of the Superior Court in regard to matters not presented for decision will be stricken on appeal in order that subsequent proceedings may not be prejudiced thereby.

APPEAL by plaintiff from *Clarkson, J.*, at the 7 October 1966 Session of BURKE.

The plaintiff is the owner of a dwelling house designated as 106 Dale Circle in an area which the city of Morganton asserts it annexed. The plaintiff denies the validity of the annexation. When the house was vacated by the former tenant of the plaintiff, the city caused it to be inspected and, upon finding that the house was unfit for human habitation, it caused to be posted thereon a notice reading, "THIS BUILDING IS UNSAFE, AND ITS USE FOR OCCUPANCY HAS BEEN PROHIBITED BY THE BUILDING OFFICIAL." The plaintiff contends that this notice is void and of no legal effect. During the occupancy of the house, it was supplied with electricity and water through connection with the city owned electric and water distribution systems. When the former tenant moved out, the city cut off its electricity. Following the posting of the above notice, the plaintiff rented the house to a new tenant who called upon the city for reconnection of the electric service and tendered the usual deposit. The city refused to provide electric service to the house. In consequence, the new tenant did not move into it.

The alleged annexation of the area including these premises occurred in October, 1963. Thereafter, the plaintiff paid taxes levied upon her by the city on account of this property, there being no suggestion that she paid them under protest. Subsequently, the city adopted an ordinance called the "Southern Housing Code."

The plaintiff prays for: (1) An injunction requiring the city "to cease its interference with the use of the premises" by the plaintiff; (2) a mandatory injunction requiring the city to furnish electricity to the premises; (3) that the city be required to remove its notice of condemnation; and (4) damages for loss of rents and profits due to the city's refusal to supply electricity.

The defendant was ordered to appear and show cause why the injunction, as prayed for in the complaint, should not be granted pending the final determination of the action. At the hearing the plaintiff offered in evidence the annexation ordinance, the Southern Housing Code, the notice posted on the building by the city, letters from the city to the plaintiff advising her that the city had inspected this and other houses belonging to the plaintiff and found them "unfit for human habitation as provided by the Morganton Housing Code," and a map of the annexed area including this property.

P. D. Heffner, housing official of the city, testified on behalf of the city that he had inspected this property and found it in a "terribly run down condition," which he described in detail, including the statement, "The wiring is dangerous." He testified that he discussed the matter with the plaintiff's agent when the former tenant moved

out and the electric service was cut off, the agent then agreeing that "the house was run down and not fit for people to live in." In the opinion of Mr. Heffner, "This house is not fit for human habitation." Other houses owned by the plaintiff are in the same condition but are presently occupied by tenants. The city is still furnishing electric power to those houses until the present occupants vacate them. There is no sewer line available to this property, which the plaintiff contends is a violation of the city's duty under its housing code.

The defendant also offered in evidence the affidavit of J. Bill Hines, assistant housing official of the city, to the effect that he had inspected the house, that it fell "far below the minimum requirements of the Housing Code," and that "the wiring in all of these houses is unsafe and dangerous." Photographs of the house were also introduced in evidence.

Among other findings of fact, the court found: The area in question was annexed to the city; the plaintiff paid city taxes on the property; when the house became vacant, the electrical service was cut off; the city has adopted the "Southern Standard Housing Code" and pursuant thereto its housing official inspected the house, met the plaintiff's agent on the premises and discussed the condition of the house with him; the above described notice was thereupon affixed to the door; there is no other available source of electric power for use in this house; the city refused, and continues to refuse, to supply electric power to the new tenant of the plaintiff or the plaintiff at this house, notwithstanding the tender by the tenant of the deposit usually required for such service connection; the city so refused "as a method of enforcing the provisions of the 'Southern Housing Code' "; and the house is unfit for human habitation. Upon these and other findings of fact not essential to the determination of this appeal, the court concluded that the plaintiff is estopped to deny the validity of the annexation of this property to the city; that the city has a right to prevent "the occupancy and use of this dwelling house by people," and has the right to refuse to permit the house to be connected to its electrical distribution system. Accordingly, the court denied the injunctive relief sought by the plaintiff. From this order the plaintiff has appealed.

*Simpson & Simpson and C. David Swift for plaintiff appellant.*
*John H. McMurray for defendant appellee.*

LAKE, J. On appeal from an order granting or refusing an interlocutory injunction, this Court is not bound by the findings of fact of the trial judge, but may review such evidence submitted to him and find facts for itself. *Milk Commission v. Food Stores,* 270

N.C. 323, 154 S.E. 2d 548; *Milk Commission v. Dagenhardt*, 261 N.C. 281, 134 S.E. 2d 361; *Huskins v. Hospital*, 238 N.C. 357, 78 S.E. 2d 116. The evidence by the defendant is that two of its housing officials inspected this house and found the electrical wiring to be in a dangerous condition. This is not contradicted or disputed. We, therefore, find it to be a fact.

The plaintiff complains of two separate and distinct actions by the city. The first is the condemnation of the plaintiff's property for use as a dwelling. The second is the refusal to connect this property with the city's electrical distribution system for the furnishing to it of electric current. The first is an exercise by the city of a governmental function. The second is an exercise of a proprietary function. *Utilities Commission v. Municipal Corporations*, 243 N.C. 193, 90 S.E. 2d 519; *Grimesland v. Washington*, 234 N.C. 117, 66 S.E. 2d 794; *Millar v. Wilson*, 222 N.C. 340, 23 S.E. 2d 42.

Municipal corporations are specifically excluded from the definition of a "public utility" in G.S. 62-3 (23). Consequently, a municipal corporation distributing and selling electric energy to its inhabitants, and to others in its vicinity, is not subject to regulation by the North Carolina Utilities Commission, and the provisions of Chapter 62 of the General Statutes do not apply to it, except as otherwise expressly stated therein. However, the duty now imposed by G.S. 62-140 upon privately owned distributors and sellers of electric power not to discriminate in service or rates is merely a development of "the common law obligation of equal and undiscriminating service." See *Public Service Co. v. Power Co.*, 179 N.C. 18, 30, 101 S.E. 593, 12 A.L.R. 304, reh. dis., 179 N.C. 330, 102 S.E. 625. Upon the rehearing of that case, Brown, J., speaking for the Court, said:

> "It [a privately owned power company] cannot sell to one and arbitrarily refuse to sell to another. * * * A public-service corporation cannot arbitrarily refuse to supply one class which it has undertaken to serve. It must justify its refusal by good reasons."

In *Fulghum v. Selma*, 238 N.C. 100, 105, 76 S.E. 2d 368, this Court recognized that, in the absence of a statute, there is a duty upon a municipal corporation engaged in the distribution and sale of water to its inhabitants to serve without discrimination. There is no difference in this respect between a municipal corporation engaged in the distribution and sale of water and one engaged in the distribution and sale of electricity. That a municipal corporation engaged in such a proprietary function may not discriminate unreasonably between its inhabitants desiring such service, see also: *Home Owners'*

*Loan Corp. v. Baltimore,* 175 Md. 676, 3 A 2d 747; *Toan v. Perry,* 269 App. Div. 894, 56 N.Y.S. 2d 572; *Hall v. Village of Swanton,* 113 Vt. 424, 35 A 2d 381; *City of Montgomery v. Greene,* 180 Ala. 322, 60 So. 900. In McQuillin, Municipal Corporations, 3rd Ed., 35.35, it is said that a municipal corporation engaged in such a proprietary activity "is under a duty to supply the services which it offers to all persons who apply, without discrimination and at reasonable rates, insofar as it may reasonably do so," and that in the operation of such business, "the municipality possesses the same rights and powers with reference to its management and control that a private owner possesses." To the same effect, see *Holmes v. Fayetteville,* 197 N.C. 740, 747, 150 S.E. 624, app. dis., 281 U.S. 700. Thus, the right of a municipal corporation operating a plant for the distribution and sale of electricity to its inhabitants to refuse to serve is neither greater nor less than that of a privately owned electric power company to do so.

It is well settled that a privately owned supplier of electric power, or other public service, may not lawfully refuse its service because of a controversy with the applicant concerning a matter which is not related to the service sought. *Seaton Mountain Electric etc. Co. v. Idaho Springs Investment Co.,* 49 Colo. 122, 111 P 834; *Snell v. Clinton Electric etc. Co.,* 196 Ill. 626, 63 N.E. 1082; *Hicks v. Monroe Utilities Comm.,* 237 La. 848, 112 So. 2d 635; *Ten Broek v. Miller,* 240 Mich. 667, 216 N.W. 385; 43 Am. Jur., Public Utilities and Services, § 23; Annot., 55 A.L.R. 771.

The facts in *Ten Broek v. Miller, supra,* were very similar to those in the case now before us. There, the proprietor of a summer resort which had been furnishing water and light to the plaintiff's cottage refused to continue to do so unless he built a septic tank approved by the Board of Health. The occupant of the cottage refused to so do on the ground that he had just constructed a cesspool which was satisfactory to him. In holding that the company must supply light and water, the Supreme Court of Michigan said:

> "The installing of a septic tank was purely a collateral matter, and had no relation to the duty of defendant company to furnish the light and water and receive its pay therefor. [Citation omitted.] If plaintiff was violating a rule of the state health department, he could be proceeded against for its infraction in the proper forum. This would be a more orderly way of disposing of a dispute than for defendant to substitute itself for a court and punish plaintiff by cutting off his water and light."

Whatever may be the right of the city of Morganton, in the exercise of its governmental power, to forbid the occupancy of the plain-

tiff's house as a human habitation, that is a matter collateral to the duty of the city to supply electric power for use in this structure. A city may not deprive an inhabitant, otherwise entitled thereto, of light, water or other utility service as a means of compelling obedience to its police regulations, however valid and otherwise enforceable those regulations may be. The right of a city to cut off or refuse a service rendered by it in its proprietary capacity must be determined as if the city, in its capacity of supplier of such service, were a person separate and apart from the city as a unit of government. In the present case, it becomes apparent that for the city to deny electric service to this building, in order to compel obedience to its decree forbidding use of the building for human habitation, is arbitrary when it is remembered that electric service and water service may lawfully be demanded for purposes other than domestic consumption.

It is equally well settled, however, that a privately owned power company, and therefore a city, may lawfully refuse to supply electric energy to a building which is not properly wired. A city engaged in such proprietary activity is liable for injury due to its negligence upon the same principles applicable to a privately owned power company. *Bowling v. Oxford,* 267 N.C. 552, 148 S.E. 2d 624, and cases there cited. A privately owned power company, and so a city, which introduces into a structure electric power, knowing that the wiring of such structure is in a dangerous condition, is liable in damages for injury to persons or property proximately caused thereby. See *Keith v. Gas Co.,* 266 N.C. 119, 146 S.E. 2d 7. Such company or city may, therefore, refuse to serve a customer when its inspection of his building reveals that the wiring therein is in a dangerous condition. *Alabama Power Co. v. Sides,* 229 Ala. 84, 155 So. 686; *State v. Louisiana Gas Service Company* (La. App.), 117 So. 2d 617; *Tismer v. New York Edison Co.,* 170 App. Div. 647, 156 N.Y.S. 28; *Carroway v. Carolina Power & Light Company,* 226 S.C. 237, 84 S.E. 2d 728; *Hawkins v. Vermont Hydro-electric Corporation,* 98 Vt. 176, 126 A 517, 37 A.L.R. 1359.

It having been established that the wiring in the plaintiff's house was in a dangerous condition, there was no error in the conclusion of the court below that the city had a right to refuse to allow this dwelling house to be connected to its electrical distribution system.

The plaintiff contends that the annexation by the city of the area which includes her property was void and, therefore, her property not being within the city limits, the city had no authority to forbid its use for residential purposes. In support of her position, she asserts that the annexation ordinance adopted by the city 7 October

1963 did not refer to Chapter 1009 of the Session Laws of 1959 and the city did not record the map showing the annexation, as required by G.S. 160-453.19, until 14 May 1966.

If a city is authorized by the Legislature to adopt an ordinance, no reference in the ordinance, or in the minutes of the governing body of the city, to the statute conferring such authority upon the city is necessary in order to make the ordinance valid. Chapter 1009 of the Session Laws of 1959 is now codified as Part of Article 36, Chapter 160 of the General Statutes. It provided that the laws theretofore governing the annexation of territory by municipalities should remain in force to 1 July 1962, but the authorities granted to municipalities by the 1959 Act were and have been in full force on and after 1 July 1959. G.S. 160-453.23.

The annexation ordinance adopted by the city of Morganton, by which the plaintiff's properties were brought into the city, was introduced in evidence in the court below. It recites compliance by the city with all of the procedures made prerequisite to annexation by the 1959 Act. This Court held that where an appeal is taken from the adoption of an annexation ordinance, as provided in that statute, and the proceedings show *prima facie* that there has been a substantial compliance with the requirements and provisions of the statute, the burden is upon the party attacking the annexation to show, by competent evidence, failure on the part of the municipality to comply with the statutory requirements. *In Re Annexation Ordinance*, 255 N.C. 633, 122 S.E. 2d 690. If it be assumed that the validity of an annexation may be attacked collaterally, as here, the rule as to the burden of proof would not be more favorable to the attacking party. There is in this record no evidence of such failure by the city in the annexation procedures in question.

The requirement in G.S. 160-453.19 that a map of the annexed territory, together with a certified copy of the ordinance, be recorded in the office of the register of deeds and in the office of the Secretary of State is, obviously, not a condition precedent to the effective annexation of the territory but the imposition of a duty to be performed after the annexation is complete. Similarly, the failure, if any, of the city to extend sewer lines and other services into the annexed area, pursuant to the plan of annexation, is not a condition precedent to annexation, the statutory remedy for such failure being an application, by a person owning property in the annexed territory, for a writ of *mandamus* to compel such performance of the plan. G.S. 160-453.17(8).

Therefore, we hold that the annexation by the city of the area including the plaintiff's property was valid. It conferred upon the

city such governmental powers within that area as it is authorized to exercise elsewhere within its territorial limits.

It is well settled that a municipal corporation has no inherent police power and statutes conferring such powers upon them are to be construed strictly. *State v. Furio,* 267 N.C. 353, 148 S.E. 2d 275; *Kass v. Hedgpeth,* 226 N.C. 405, 38 S.E. 2d 164.

The city relies upon an ordinance adopted by it 25 October 1965, referred to as "The Southern Standard Housing Code." Reference to the Code of the City of Morganton, § 8-84, discloses that the ordinance adopting this housing code provided:

> "The Southern Standard Housing Code, 1965 edition, * * * is hereby adopted as the housing code of the city; provided that in the event of conflict with the provisions of said code with this Code or state law, the provisions of this Code or state law shall prevail."

The City Code, §§ 8-85 to 8-99, substantially incorporate the provisions of G.S. 160-183 to G.S. 160-189, the governing body of the city having found to exist therein the conditions specified in G.S. 160-182 as prerequisites to the adoption of an ordinance for the closing of a dwelling house unfit for human habitation. Although G.S 160-191 provides that the powers conferred upon municipal corporations by the above cited statutes are in addition to and supplemental to powers conferred by any other law, it is plain that the City Council has acted pursuant to these statutory provisions and has made its ordinance called the "Southern Standard Housing Code," subject to powers conferred upon the city by G.S. 160-183, *et seq.* It is, therefore, not necessary to inquire whether the city has any other authority to enact such police regulation.

G.S. 160-184 provides that an ordinance enacted pursuant to the authority so conferred upon the city *shall* include certain provisions. The City Code of Morganton, §§ 8-86 to 8-92, does so. Among these is the provision that whenever it appears to the officer, charged with the duty of administering such regulation, that any dwelling is unfit for human habitation, such officer shall issue and cause to be served upon the owner a complaint stating the charges in that respect and containing a notice of a hearing to be held. Another provides that if such officer, "after such notice and hearing," determines that the dwelling is unfit for human habitation he shall state "in writing his findings of fact in support of such determination," and shall issue and cause to be served upon the owner an order requiring the repair of the house under certain circumstances and its removal under other circumstances. It is then provided that if the owner fails

to comply with such order, the officer may cause the building to be "vacated and closed," and may cause to be posted upon the main entrance to the building a placard stating, "This building is unfit for human habitation; the use or occupation of this building for human habitation is prohibited and unlawful."

We do not deem the variation between the wording of the notice posted upon the plaintiff's property and that prescribed by the statute to be material. However, the record before us clearly indicates that the building inspector of the city did not comply with the procedural requirements of the statute and of the City Code. Substantial compliance with these procedures is a condition precedent to the authority of the city to forbid the use of a dwelling house for human habitation. If the "Southern Standard Housing Code" purports to confer a more extensive authority upon the city officer, which we do not determine, it is, by the very terms of the ordinance adopting it, subject to these procedural requirements in the City Code and in the statute. Thus, it cannot confer upon the officer authority to forbid the occupancy of this dwelling without compliance with these procedural requirements.

It is not contended that the city had ordered the destruction of the house in question. The authority of the city to do so is, therefore, not before us. We express no opinion with reference thereto.

The city not having afforded the plaintiff the opportunity to be heard upon the question of the fitness of her house for human habitation, and this being a prerequisite to such finding by the city official, the fitness or unfitness of the house for such use was not properly before the superior court and is not before us. The finding of fact by the superior court that "this house is unfit for human habitation" is, therefore, vacated and set aside without prejudice to the right of the city to make a determination of such matter pursuant to the procedures above mentioned. The conclusion of the superior court that notice of the condition of the house was given to the plaintiff "in substantial compliance with the code" is error and is vacated and set aside. The conclusion of the superior court that "the City of Morganton had the right to prevent the occupancy and use of this dwelling house by people" is erroneous and is vacated and set aside without prejudice to the right of the city to issue such order as may be justified by proper findings of fact, supported by evidence, made pursuant to the procedural requirements above mentioned.

There was no error in the denial of the plaintiff's motion for a temporary mandatory injunction requiring the city to supply electric service to her house. There was, however, error in the denial of

her motion for a temporary injunction requiring the defendant to remove its notice of condemnation from her property and to cease its interference with the use of the premises by the plaintiff. This matter is remanded to the superior court for the issuance of such injunction without prejudice to the right of the city to enter such order as may be appropriate after compliance by the city with the above mentioned procedural provisions of its code and the statutes above cited.

Error and remanded.