STATE OF NORTH CAROLINA, EX REL UTILITIES COMMISSION AND SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, APPLICANT AND THE ERVIN COMPANY v. TOWN OF PINEVILLE, NORTH CAROLINA AND PINEVILLE TELEPHONE COMPANY

No. 7210UC68

(Filed 29 March 1972)

1. **Utilities Commission § 2— public utility — municipal corporation**

   A municipal corporation is specifically excluded from the definition of a public utility under the provisions of G.S. 62-3(23)d.

2. **Telephone and Telegraph Companies § 1— extension of telephone service area — area served by municipally-owned company — failure to hear all of intervenors' evidence**

   Where a municipality and a telephone company owned by the municipality were allowed to intervene in a hearing upon an application by Southern Bell Telephone Company to extend its telephone service area boundary to include an area served by the municipality's telephone company, the Utilities Commission erred in finding facts and approving the application after hearing only a portion of the evidence which the municipality and its telephone company desired to offer.

3. **Utilities Commission § 1— conduct of hearing — judicial capacity**

   When the Utilities Commission conducts a hearing, it acts in a judicial capacity and must render its decisions upon questions of law and fact in the same manner as a court of record. G.S. 62-60.

APPEAL by Town of Pineville and Pineville Telephone Company from Order of North Carolina Utilities Commission dated 20 July 1971.

On 23 March 1971 Southern Bell Telephone and Telegraph Company (Southern Bell) filed with the North Carolina Utilities Commission (Commission), as information, its Eighteenth Revised Charlotte Exchange Service Area Map (Map), issued 22 March 1971 and effective 26 April 1971. In filing the map, Southern Bell indicated to the Commission that it was designed to reflect an extension of its Charlotte Exchange Service Area beyond the boundaries previously on file with the Commission, to include that part of the Raintree development (Raintree) north of Four Mile Creek and other adjacent areas not served by another public utility. The area within the boundaries of the Town of Pineville was specifically excluded.

On 30 March 1971 the Commission issued an order holding that the filing of the map affected the Town of Pineville and The Ervin Company (Ervin) developer of the Raintree development; that "it appears that a portion of said Raintree development lying south of the City of Charlotte and immediately north of the Town of Pineville is presently served by the municipally-owned telephone system of the Town of Pineville"; that the Town of Pineville and Ervin were entitled to notice and an opportunity to be heard; that the map was "suspended" pending a public hearing; that a hearing be held by the Commission on 19 May 1971 in connection with the filing of the map; and that a copy of the order be served on the Town of Pineville and Ervin.

On 23 April 1971 the Town of Pineville *and* the *Pineville Telephone Company,* in a petition for leave to intervene, signed by "Attorneys for Town of Pineville and Pineville Telephone Company, alleged:

"(1) That the correct names and addresses of petitioners are as follows:

Town of Pineville
200-208 Dover Street
Pineville, North Carolina

Pineville Telephone Company
200-208 Dover Street
Pineville, North Carolina

(2) That the Pineville Telephone Company has been operated by the Town of Pineville since the telephone system was purchased by the Town of Pineville under date of March 28, 1938; that said system included and has continued to include much of the territory proposed to be an extension of the service area boundary by Southern Bell Telephone and Telegraph Company (hereinafter referred to as 'Southern Bell') in connection with its filing of Exchange Service Area Map, designated as Eighteenth Revised Charlotte Exchange Service Area Map, showing issue date March 22, 1971.

(3) That the approval of Southern Bell's Eighteenth Revised Charlotte Exchange Service Area Map would not be in the best interest of the public, same would be a duplication of service now offered by Pineville Telephone Company which service can be made available to additional customers including The Ervin Company, developers of the Raintree development.

(4) That prior to the purchase by the Town of Pineville of the telephone system in the area involved in the filing by Southern Bell herein, there had been no interest or indication of interest on the part of said Southern Bell and/or its predecessors in providing much needed telephone service in the area now proposed to be served and included in the Eighteenth Revised Charlotte Exchange Service Area Map.

(5) That the petitioners from the date of purchase of the telephone system referred to above tried at all times to develop and expand said telephone system as needs appeared and service requested.

(6) That the Commission should reject said Eighteenth Revised Charlotte Exchange Service Area Map and thereby prohibit an extension of the service area boundary of said Southern Bell beyond those boundaries previously on file with the Commission as said proposal affects the previously established service area of Pineville Telephone Company."

Ervin filed a petition dated 4 May 1971 for leave to intervene in which it alleged that it was the owner and developer of approximately 1,500 acres of land in Mecklenburg County,

called Raintree; that North Carolina Telephone Company served the area south of Four Mile Creek; that Southern Bell and Pineville Telephone Company each serve to some extent a portion of Raintree that lies north of Four Mile Creek; that the facilities of Pineville Telephone Company were inadequate and its service was poor; and that Ervin had made demand on Southern Bell to provide service for the portion of Raintree lying north of Four Mile Creek.

Southern Bell, responding to the petition for leave to intervene filed by the Town of Pineville and Pineville Telephone Company, asserted that it was a public utility and subject to the jurisdiction of the Commission under Chapter 62 of the North Carolina General Statutes; that Ervin had demanded that it provide service; that it had filed the map reflecting an extension of its Charlotte Exchange Service Area to include the area shown thereon outside the town limits of Pineville but not included in the telephone service area of any other "public utility" under the jurisdiction of the Commission; that by filing the map it indicated its willingness to serve any person in this area; that it did not desire "to prevent present customers of the Pineville Telephone Company from continuing to receive telephone service from that company"; and requested that the Commission recognize the filing of the map as a representation of its willingness to serve the area included in it.

By order dated 10 May 1971, the Commission allowed the Town of Pineville, Pineville Telephone Company and Ervin to intervene, declared them to be parties, and permitted them to participate in the hearing.

The public hearing was begun 19 May 1971. At the hearing Southern Bell offered the map in evidence and offered testimony that Ervin had petitioned it for service in the Raintree area. Southern Bell's evidence also tended to show that the area shown on the map would extend its Charlotte Service Area boundary to a line contiguous with the boundary of an area served by North Carolina Telephone Company, to a line along the boundary line between North Carolina and South Carolina and to a line representing the town limits of the Town of Pineville.

Intervenor Ervin offered evidence that part of the area shown on the map was being served by Pineville Telephone

Company; that the service rendered by Pineville Telephone Company was not satisfactory; and that it had requested Southern Bell to serve that part of Raintree not served by another public utility.

Intervenor Town of Pineville and Pineville Telephone Company offered evidence that the Town of Pineville, a municipal corporation, had purchased "this system" for $7,000 from S. L. Meacham, an individual, on 1 April 1938. Robert K. Taylor testified that he was the Mayor of the Town of Pineville at the time and "(s)o we decided, the Board, all of us decided we would buy it for $7,000, so we didn't have the money at the time to buy it but issued bonds for it, had an election for the people to vote on it, and we got the money, fixed it up . . . but people, 51 over there, couldn't get Southern Bell to run a line up there at this time, 1938 and 1937 and on up because there wasn't enough customers. * * * Pineville from the time of purchase began to operate the system. We operated the system within the city limits and outside the city limits. We ran lines out beyond the city limits, and we had people out in that area who wanted service. They could not get service from anyone else. During the time I was mayor, the Town Board took steps to try to improve the service and improve the equipment. They spent lots of money and put it in good shape."

Sam A. Satterfield, another witness for the Intervenor Town of Pineville and Pineville Telephone Company, testified:

"I served as Town Clerk of the Town of Pineville for a period of eight years from 1938 to 1946. I came in as Town Clerk following the purchase by the Town of Pineville of the telephone system. I had the responsibility of operating the system. I was foreman over the maintenance man and selected to keep the books. * * * I am presently a member of the Town Board, and have been serving in that capacity for four years. I have lived in Pineville during all this period. During the time I have sat on the Board, there have been requests for service to come to the Board from time to time. Efforts have been made to comply with all these requests. * * * Yes, we are making money. As to how much we made last year, I am not the bookkeeper."

Prior to the presentation of this evidence, the attorney for the Town of Pineville and the Pineville Telephone Company had

announced to the Commission that they had six witnesses to offer—"three of whom will take considerable time." The Chairman of the Commission had stated at that time, "We don't mind staying with you awhile. It is now quarter to five." The attorney replied in part, "I think we could get two or three maybe short ones." Whereupon they offered three witnesses. After these three witnesses testified, Ervin made an oral motion "that this matter should be determined on the law," and the Chairman of the Commission stated, "We will recess to a date hereinafter and we will advise you of that date." On 30 June 1971 the Commission, after considering the oral motion of Ervin, issued an order allowing the parties until 14 July 1971 to file briefs with respect thereto.

On 15 July 1971, the Town of Pineville filed a motion asking the Commission to issue an order "requiring Southern Bell Telephone and Telegraph Company to cease and desist from engineering and construction of facilities for the purpose of serving the Raintree area." Attached to this motion was a letter from Southern Bell to the Commission dated 13 July 1971 indicating an intent to install services to Ervin in the Raintree area on 16 July 1971. This motion to cease and desist was denied on 16 July 1971.

Under date of 20 July 1971, after briefs had been filed but without any further hearing, the Commission ruled on the oral motion of Ervin and found that Southern Bell was a public utility engaged in conveying and transmitting messages and communication by telephone; that the map filed reflected an extension of its service area to include contiguous territory in Mecklenburg County; that the Town of Pineville purchased a telephone system in 1938 and since that time had rendered telephone service to the public within, and to some extent outside of, its limits, and within the area embraced within the map; that the territorial extension included in the map was not now receiving telephone service from another public utility; that the Town of Pineville and Pineville Telephone Company (which was owned by said Town) was not a "public utility"; that Southern Bell and the Town of Pineville offer limited telephone service in the area involved; and that by filing the map Southern Bell indicated its willingness to serve any person who might request service in the area included therein.

Upon the foregoing findings of fact, the Commission on 20 July 1971 made the following conclusions and entered the following order:

"The Public Utilities Act of this State authorizes public utilities to extend their certificated service areas into contiguous areas not receiving similar service from other public utilities, without the necessity of obtaining a Certificate of Public Convenience and Necessity. (N.C. G.S. 62-110)

It is clear that the Town of Pineville (and Pineville Telephone Company, owned and operated by the Town of Pineville) is not a 'public utility' as defined by the Public Utilities Act for the reason that municipalities are excluded from said definition. (N.C. G.S. 62-3(23)d.) Therefore, said Town of Pineville is not subject to the jurisdiction of this Commission and is not obligated nor protected by the Public Utilities Act.

In view of the fact that the area included in the Eighteenth Revision of the Charlotte Exchange Service Area Map is not an area served by another 'public utility', S.B.T.&T. has the lawful right to express its willingness to serve, and in fact to serve any person in this area who might request its service, the same being contiguous to their present service area; and indeed, having filed such a revision, Southern Bell will be obligated to so serve upon approval by the Commission.

The filing by S.B.T.&T. of the subject map does not prevent customers of Pineville Telephone Company from continuing to receive telephone service from that Company, nor others from receiving such service in the future if they so desire.

The Commission concludes that this is a matter which should be determined upon the Motion of Ervin without further public hearings and that the suspension of the Eighteenth Revised Charlotte Exchange Service Area Map filed herein on March 23, 1971, should be vacated to the end that the same shall be approved and allowed to become effective.

IT IS, THEREFORE, ORDERED as follows:

1. That the suspension of the Eighteenth Revised Charlotte Exchange Service Area Map filed herein on March 23, 1971, by Southern Bell Telephone and Telegraph Company be, and the same is, hereby vacated and set aside.

2. That the said Eighteenth Revised Charlotte Exchange Service Area Map filed herein on March 23, 1971, be, and the same is, hereby approved and allowed to become effective as provided by law."

The Town of Pineville and Pineville Telephone Company appealed to the Court of Appeals.

*Edward B. Hipp and Maurice W. Horne for North Carolina Utilities Commission, appellee.*

*Joyner & Howison by James M. Kinzey for Southern Bell Telephone and Telegraph Company, appellee.*

*Broughton, Broughton, McConnell & Boxley by J. Melville Broughton, Jr., J. Mac Boxley and Charles P. Wilkins; and Kenneth R. Downs for the Town of Pineville and Pineville Telephone Company, appellant.*

MALLARD, Chief Judge.

[1] The Town of Pineville, in Mecklenburg County, is a municipal corporation existing since 1873. See Chapter 41 of the Private Laws of 1973 and Chapter 296 of the Session Laws of 1965. A municipal corporation is specifically excluded from the definition of a public utility under the provisions of G.S. 62-3(23)d. See also, *Dale v. Morganton*, 270 N.C. 567, 155 S.E. 2d 136 (1967). In the appellant's brief, the Town of Pineville and Pineville Telephone Company are referred to as if they were two separate entities; however, it is not revealed in the record what kind of legal entity the Pineville Telephone Company is, if any. Upon the oral argument before this court, the attorney for the Town of Pineville stated that the "Pineville Telephone Company" was not a corporate entity, a partnership, or an individual, but was an "unincorporated association of people."

[2] The principal contention of the Town of Pineville and the Pineville Telephone Company is that they were not permitted to offer all their evidence and that the Commission committed error

in finding facts on the evidence offered without affording them an opportunity to complete the offering of their evidence. They also contend that the facts so found were improperly used as a basis for conclusions of law and entry of an order adverse to their interests.

The Commission found as a fact from the evidence presented, and concluded as a matter of law from the facts so found, that the Town of Pineville and the Pineville Telephone Company, were not a "public utility" within the meaning of the Public Utilities Act. Under this Act (Chapter 62 of the General Statutes), a public utility is, among other things:

> "a. . . . (A) person, whether organized under the laws of this State or under the laws of any other state or country, now or hereafter owning or operating in this State equipment or facilities for:
>
> \* \* \*
>
> 6. Conveying or transmitting messages or communications by telephone or telegraph, or any other means of transmission, where such service is offered to the public for compensation."

G.S. 62-3(23).

A "person" as defined in the Act is:

> ". . . (A) corporation, individual, copartnership, company, association, or any combination of individuals doing business as a unit, and includes any trustee, receiver, assignee, lessee, or personal representative thereof." G.S. 62-3(21).

In this connection, however, we note that the Charter of the Town of Pineville was revised by Chapter 296 of the Session Laws of 1965 and now contains the following provisions authorizing the town:

> "(2) To furnish all local public services; to purchase, hire, construct, *own, maintain and operate* or lease *local public utilities,* to acquire, by condemnation or otherwise, within or without the corporate limits, property necessary for any such purposes, subject to restrictions imposed by general law for the protection of other communities; and

to grant local public utility franchises and regulate the exercise thereof.

\* \* \*

*Sec. 33.* Saving Clause. If any part of this Charter shall be declared invalid by a court of competent jurisdiction, such judgment shall not invalidate the remainder of the Charter. *The provisions of this Charter shall supersede all laws and ordinances not consistent herewith, insofar as the Town of Pineville is affected thereby.*" (Emphasis added.)

The Commission, after having entered an order permitting the Town of Pineville and the Pineville Telephone Company to intervene and offer some of their witnesses, did not advise them of a date for a further hearing to receive evidence and did not permit them to offer all of their evidence. In entering the order the Commission stated that it made findings of fact "upon consideration of the entire record in this matter, *including evidence and exhibits of the parties.*" We hold that it was error for the Commission, after permitting the Town of Pineville and the Pineville Telephone Company to intervene and declaring them parties, to fail to hear and consider all of their evidence insofar as it was competent.

[3] When the Commission is conducting a hearing, it is acting in a judicial capacity and shall render its decisions upon questions of law and of fact in the same manner as a court of record. G.S. 62-60. Controverted questions of fact, or issues of fact, are decided in a court of record after all of the competent evidence of the parties is offered with respect thereto. In the matter before us, the Commission was informed at the hearing on 19 May 1971 that the Town of Pineville and the Pineville Telephone Company had additional witnesses to offer. The Commission, however, proceeded to find the facts *after considering the evidence already offered* without ever having heard these additional witnesses. It may be that the Town of Pineville and the Pineville Telephone Company will be unable to offer competent evidence sufficient to support a different result, but under the circumstances of this case, they are entitled to the opportunity to do so.

The question of whether the Commission committed error on 16 July 1971 when it denied the motion of the Town of Pineville (alone), filed 15 July 1971, requesting that Southern Bell

be ordered to cease and desist from the engineering and construction of facilities for the purpose of serving Raintree is not properly presented and is not decided. The Town of Pineville and Pineville Telephone Company have other assignments of error which we do not deem necessary to rule on in view of the disposition of this appeal.

The "Commission's Final Order" entered herein under date of 20 July 1971 is vacated and this cause is remanded for further proceedings herein as provided by law.

Error and remanded.

Judges MORRIS and PARKER concur.