IN RE: LOWER CAPE FEAR WATER AND SEWER AUTHORITY, AND THE COUNTY OF BRUNSWICK

No. 427PA89

(Filed 14 August 1991)

**Sanitary Districts § 2 (NCI3d)— water and sewer authority— different rates—contribution to building**

The Lower Cape Fear Water and Sewer Authority could grant Brunswick County a different water rate than that charged other members based on the substantial difference between the position of the County vis-a-vis the Authority and the position of the other members. The Authority would not have become viable without the contributions made by Brunswick County, including a loan of $5,653,200 which made it possible for the Authority to obtain $8,000,000 in grants, and paying the operating and administrative expenses of the Authority from October 1984 until July of 1987.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 574.**

**IN RE LOWER CAPE FEAR WATER AND SEWER AUTHORITY**

[329 N.C. 675 (1991)]

ON discretionary review pursuant to N.C.G.S. § 7A-31 prior to determination by the Court of Appeals of a declaratory judgment for Lower Cape Fear Water and Sewer Authority entered by *Stevens, J.*, on 25 July 1989 in Superior Court, NEW HANOVER County. Heard in the Supreme Court 11 April 1990.

This is an action for a declaratory judgment in which Brunswick County and the Lower Cape Fear Water and Sewer Authority joined, asking for a declaration of the rights of the parties pursuant to certain contracts they had made.

The parties stipulated to the following facts. The Authority is a public instrumentality formed pursuant to N.C.G.S. § 162A-1, *et seq.* to provide water for its members. The members of the Authority are the City of Wilmington and the Counties of New Hanover, Bladen, Columbus, Pender and Brunswick.

The Authority was organized to supply water for all its members and large industrial users of water. In 1982, when the construction of the Authority's facilities was commenced, Brunswick County was the only member of the Authority which contributed to the financing of this construction. The County advanced $5,653,200 to the Authority to help finance the projects. This advance was from funds the County had received from the issuance of general obligation bonds. The Authority and the County at that time entered into an agreement under which the Authority agreed to charge a sufficient amount for the water it supplied to service these bonds and to pay such money to the County. This advance to the Authority enabled it to obtain grants totaling $8,000,000 from the United States Economic Development Administration and from the State of North Carolina. It was also agreed that if the Authority acquired or constructed any improvements that in the opinion of the County did not directly or indirectly benefit the County, the County would not be required to pay that portion of any rate that relates to the cost of any improvement unless it consented to do so.

The facilities of the Authority were completed in 1984. The County had not completed its water treatment plant at that time and was not able to take any water from the Authority. The County paid to the Authority sufficient sums to maintain its facilities until the County completed its plant and began taking water from the Authority.

## IN RE LOWER CAPE FEAR WATER AND SEWER AUTHORITY

[329 N.C. 675 (1991)]

At the present time Brunswick County is the only member of the Authority which receives water from it. The City of Wilmington and two industries have asked the Authority to expand its distribution system to include them. The City of Wilmington and the industries propose to contribute $3,800,000 to pay for the expansion and the Authority proposes to issue $4,100,000 in revenue bonds for the expansion. The County has notified the Authority that it will not agree to pay as part of its rate any sum for debt service on the Authority bonds to finance the expansion unless the Authority will renegotiate the rate the County is paying the Authority.

The parties brought this action to have the court determine their rights and duties under the agreement. The superior court declared void the part of the agreements between the parties which allowed the County to refuse to pay any part of a rate which in the opinion of the County was to be used for construction which does not benefit the County.

The County appealed.

*Alfred P. Carlton, Jr., for appellant County of Brunswick.*

*Hogue, Hill, Jones, Nash & Lynch, by William O. J. Lynch, for appellee Lower Cape Fear Water and Sewer Authority.*

WEBB, Justice.

The County has not assigned error to the holding of the superior court that declared void the provisions of the contract which say the County is not required to pay a rate based on capital improvements which in the opinion of the County do not benefit the County. The County's only assignment of error is the court's failure to find that on the facts of this case the Authority may legally discriminate in water rates and thus charge the County less than rates it charges other customers.

The Authority is not subject to the Act governing public utilities. N.C.G.S. § 62-3(23)(d) (1989). It is subject to the common law rule that it cannot charge rates that would constitute an unwarranted discrimination among the parties it was formed to serve. *Paper Co. v. Sanitary District*, 232 N.C. 421, 61 S.E.2d 378 (1950).

The parties agree that there can be a differential in rates if the circumstances justify it. The question posed by this appeal is whether the facts of the case justify a different rate to the County.

IN RE LOWER CAPE FEAR WATER AND SEWER AUTHORITY

[329 N.C. 675 (1991)]

The County says the Authority may grant it a different rate from the rates given other customers. It says this is so because it advanced $5,653,200 to the Authority to help construct the facilities of the Authority and because it paid to the Authority sufficient sums to maintain the facilities after the facilities were complete and before the County was in a position to take water from the Authority. No other members of the Authority made a contribution which made the Authority viable.

The Authority says there is not a sufficient reason to differentiate in the rates charged the County and other customers. It says that the $5,653,200 which the County advanced to the Authority was not a gift but a loan. The County issued general obligation bonds to acquire this money it advanced to the Authority and the Authority is obligated to charge a sufficient rate to service these bonds and pay such sums to the County. For this reason, says the Authority, the County has not made a contribution to the Authority sufficient to justify a difference in rates. It is true that the Authority is obligated to repay the $5,653,200 advanced to it by the County. Nevertheless this grant contribution enabled the Authority to receive other grants totaling $8,000,000. This sum of money enabled the Authority to build its facilities and commence operation. This is a substantial contribution.

The Authority, relying on *Dale v. Morganton*, 270 N.C. 567, 155 S.E.2d 136 (1967), says that its common law duty not to discriminate is the same as for public utilities. It says that based on *Utilities Com. v. Mead Corp.*, 238 N.C. 451, 78 S.E.2d 290 (1953), it cannot give the County a different rate from its other customers. In that case we held that the Aluminum Corporation of America, which owned all the stock of Nantahala Power and Light Company, could not receive a preferential rate in relation to other customers without proving some distinctive fact that justifies the preference. Assuming cases involving utility rates are precedent for determining rates charged by the Authority in this case, *Mead* does not govern this case. Nantahala was a public utility owned by Alcoa. We held that a wholly owned utility could not discriminate in rates between its parent company and other customers. In this case the County does not own the Authority. It has made a substantial contribution to the Authority which puts it in a position different from other members.

The Authority also argues that the fact that the County paid the operation and maintenance expenses for the Authority from October 1984 until the County started receiving water does not entitle the Commission to grant the County a different rate. The Authority says the County received full value for this contribution by having water available when the County was ready to take it. Whatever benefit this was for the County it was also a benefit to the Authority which enabled the Authority to continue in business.

We hold that the Authority may grant the County a different rate on the water it receives from the Authority. The Authority could not have become viable if Brunswick County had not made the contributions that it made. It lent the Authority $5,653,200. Because of this loan the Authority was able to obtain grants totaling $8,000,000 from the United States Economic Development Administration and the State of North Carolina. The County paid the operating and administrative expenses of the Authority from October 1984 until July 1987. These were substantial contributions to the Authority without which it would not have been able to begin its operation or stay in business. Based on this substantial difference between the position of the County vis-a-vis the Authority and the position of the other members, the Authority does have the right to charge a rate to the County different from the rate it charges other members.

Reversed and remanded.