DILLON, Judge.
*781 United States Cold Storage ("USCS") appeals from a declaratory judgment allowing the Town of Warsaw to terminate sanitary sewer services to its facility, which is located outside the corporate limits of the Town of Warsaw. For the following reasons, we affirm.
*782 I. Background
USCS owns a facility in Duplin County outside the corporate limits of the Town of Warsaw. USCS filed a complaint seeking a declaratory judgment alleging the following facts:
USCS operates cold storage and refrigeration facilities in a number of states. In 1995, USCS entered into an agreement with Duplin County to purchase a tract of land from the County on which to construct a large refrigerated warehouse facility. The agreement required Duplin County to pay for the extension of public water and sewer lines to the location where the facility would be built. The Town of Warsaw provided water and sewer services to the part of the county where the facility was to be located.
The 1995 agreement between USCS and Duplin County also contained a "no annexation provision" whereby Duplin County agreed to obtain a commitment from the Town of Warsaw not to seek annexation of the USCS facility for at least eight years. Specifically, the annexation provision stated as follows:
[Duplin County] shall have obtained, at no cost to [USCS], an agreement with the City of Warsaw, North Carolina, that it will not, for a period of at least eight years following Closing, annex the Premises to the City of Warsaw. [Duplin County] shall, in connection with such Agreement, provide to [USCS] a certification or opinion from the solicitor of the City of Warsaw that the individual or individuals executing such agreement have the authority to do so.
In 1997, the USCS facility was completed, and the Town of Warsaw began providing public sanitary sewer service to the USCS facility in Duplin County. USCS pays the Town of Warsaw for this service.
In 2012, the General Assembly enacted annexation reform legislation which limits a municipality's ability to annex an area without the consent of the owners of the affected property.
In 2013, the attorney for the Town of Warsaw sent a letter to USCS requesting that USCS "voluntarily annex to the Town of *577 Warsaw." The letter also stated that the Town of Warsaw was under no obligation to continue providing sewerage service to the USCS facility since the facility was located outside of its corporate limits.
USCS responded, notifying the Town of Warsaw that it did not desire to seek voluntary annexation of its facility into the Town's corporate *783 limits. (Agreeing to voluntary annexation would require USCS to incur approximately $88,000.00 in annual expenses in the form of property taxes paid to the Town.) The Town of Warsaw then responded, notifying USCS that it planned to cease providing sewerage service to the facility if USCS did not seek voluntary annexation.
In 2014, USCS commenced this declaratory judgment action. The trial court granted USCS's motion for a preliminary injunction, which restrained the Town of Warsaw from discontinuing sewerage service to the USCS facility.
In October 2014, following a hearing on the matter, the trial court entered an order dissolving the preliminary injunction, declaring that the Town of Warsaw was under no obligation to continue sewerage service to the USCS facility. Two days later, however, the trial court entered a temporary stay of this order pending appeal, thereby allowing USCS to continue receiving sewerage service at its facility from the Town of Warsaw until further court order. USCS has timely appealed the trial court's order declaring that the Town of Warsaw has no obligation to continue providing sewerage service to the USCS facility.
II. Standard of Review
This matter involves an action for declaratory relief, specifically seeking a court order which declares the rights of the parties concerning the provision of sewerage service by the Town to the USCS facility. Because this case is purely a question of law and a judgment will "settle and [ ] afford relief from uncertainty," we agree with the parties that a motion for declaratory judgment was properly heard in the trial court. See N.C. Gen.Stat. § 1-264 (2013). In the context of a declaratory judgment action, we review the trial court's findings of fact to determine whether they are supported by competent evidence, and we review the trial court's conclusions of law de novo. Calhoun v. WHA Med. Clinic, PLLC, 178 N.C.App. 585, 596-97, 632 S.E.2d 563, 571 (2006).
III. Holding
We hold that the trial court correctly declared the rights of the parties. Specifically, we hold that the Town of Warsaw has the legal right to discontinue sewerage service to the USCS facility, provided that the Town is not unfairly discriminating between USCS and other non-residents similarly situated who currently receive sewerage service. Further, we hold that the Town of Warsaw has the legal right to condition continued service to USCS's facility on the voluntary annexation of the facility into the Town's corporate limits, again provided that the Town is not *784 unfairly discriminating between USCS and other non-residents similarly situated who currently receive sewerage service.
There may be some sympathy in USCS's contention that the Town is cutting off service to coerce USCS to seek voluntary annexation and that the effect of the trial court's order is that USCS will incur great expense, either in the form of the payment of annual property taxes to the Town or in the form of costs incurred to arrange for an alternate source of sewerage service to its facility. However, the town contends that it has been deprived of its ability to collect property taxes from a property owner who is enjoying Town services and that property taxes are a major source of the Town's total revenue. Wherever the sympathies may lie, however, we reach our holding by following the direction of our Supreme Court declared in Fulghum v. Selma, a factually similar case from the middle of the last century. In Fulghum, a property owner sued a municipality to enjoin the municipality from cutting off his water service, contending that the municipality had enacted an ordinance to coerce him to sell to the municipality certain water pipes he had built to supply water to non-residents. Fulghum v. Selma, 238 N.C. 100, 76 S.E.2d 368 (1953). The Court admitted that "there may be more than a modicum of truth in the assertion [regarding the municipality's]
*578 coercive purpose [in enacting the ordinance.]" Id. However, the Court recognized the function of the courts: "Be that as it may, we must remember that hard cases are the quicksands of the law[1] and confine ourselves to our appointed task of declaring the legal rights of the parties." Id. at 103, 76 S.E.2d at 370 (emphasis added).
IV. Analysis
Our General Assembly has authorized towns to own and operate water and sewer systems serving customers both within and outside their corporate limits. N.C. Gen.Stat. § 160A-312 (2014). And our Supreme Court has held that a town which chooses to provide such *785 service to its inhabitants has a duty, generally, "to its inhabitants to serve without discrimination." Dale v. Morganton, 270 N.C. 567, 571, 155 S.E.2d 136, 141 (1967) (emphasis added). See also In re Annexation Ordinance, 255 N.C. 633, 646, 122 S.E.2d 690, 700 (1961) (holding that when a town supplies water to its inhabitants, it "owes the duty of equal service to consumers within its corporate limits " (emphasis added)).
Our General Assembly has provided, however, that "in no case shall a [town] be held liable for damages to those outside the corporate limits for failure to furnish [water or sewer services]." N.C. Gen.Stat. § 160A-312(a) (emphasis added). In Fulghum, our Supreme Court held that a town has no obligation to furnish such services to non-residents. Fulghum, 238 N.C. at 104, 76 S.E.2d at 371 ("A municipality which operates its own water works is under no duty in the first instance to furnish water to persons outside its limits.").
When a town, however, seeks to provide water or sewer service to non-residents, our General Assembly has determined that said town may provide such services to non-residents "within reasonable limitations." N.C. Gen.Stat. § 160A-312(a). Our Supreme Court has described the nature of a town's authority in this respect as follows: "When a municipality exercises this discretionary power, it does not assume the obligations of a public service corporation toward nonresident consumers[,]" but rather, the town "retains the authority to specify the terms upon which nonresidents may obtain its water [or sewer service]." Fulghum, 238 N.C. at 104-05, 76 S.E.2d at 371 (emphasis added).
Our Supreme Court has recognized that a town may obligate itself to nonresidents by contract to provide services, stating:
"The relationship existing between the [town and the nonresident who receives services] is contractual[.] The [town] has no legal right to compel residents living outside its corporate limits to avail themselves of the services[.] On the other hand, in the absence of a contract providing otherwise, such residents are not in position to compel the [town] to make such services available to them."
Atlantic Const. Co. v. City of Raleigh, 230 N.C. 365, 369, 53 S.E.2d 165, 168 (1949). The Supreme Court, though, has further stated that if there is nothing in the contract or inherent in the surrounding circumstances to indicate that the contractual obligation was to run in perpetuity or for some ascertainable period, "the contract is terminable at will by either party on reasonable notice to the other." Fulghum at 104, 76 S.E.2d at 370.
*786 In the present case, the evidence does not disclose that the Town of Warsaw has any contractual obligation to supply services to the USCS facility in perpetuity or for some ascertainable period beyond the initial eight (8) years. Further, there is no indication that any principles of estoppel compel the Town of Warsaw to continue providing such service. Rather, USCS constructed its *579 facility in the 1990s with full knowledge that its facility could be subject to annexation by the Town after eight years. As such, the Town of Warsaw "retains the authority to specify the terms" by which USCS and others similarly situated may continue to receive sewer services.
USCS relies on our Supreme Court's opinion in Dale v. City of Morganton to argue that a municipality cannot deny service because of some controversy with the consumer "which is not related to the service sought." Dale, 270 N.C. at 572, 155 S.E.2d at 141. However, this principle is not applicable in the present case, since USCS is not an "inhabitant," see id. at 571, 155 S.E.2d at 141, and, unlike in Dale, the Town of Warsaw has no continuing duty (contractual or otherwise) to furnish services to USCS. Indeed, our Supreme Court has recognized a municipality's right to discriminate between its inhabitants and those customers outside its corporate limits by raising rates only on those existing customers outside the corporate limits. See Fulghum, supra.
While a municipality may discriminate between inhabitants as a class and non-inhabitants as a class in the provision of services, a municipality may not unlawfully discriminate among non-inhabitants in setting conditions for the provision of such services to said non-inhabitants. Here, though, the record demonstrates that the Town of Warsaw has not discriminated between USCS and its other commercial customers outside the Town's corporate limits. Rather, the record reflects that the Town made voluntary annexation a condition on all of them to continue receiving service.[2]
V. Conclusion
The Town has no right to compel USCS to annex into its corporate limits under the current statutory scheme. However, USCS's right to oppose annexation does not create a right of USCS to continue receiving sewerage service from the Town in perpetuity. The Town has no *787 contractual obligation to do so, nor does the Town have the obligation of a public service corporation to provide such service to USCS. Id.
AFFIRMED.
Judge STROUD concurs.
Judge HUNTER, JR., dissenting by separate opinion.

This metaphor has been used on a number of occasions by our Supreme Court. An early use by that Court was in an opinion penned by Richmond Mumford Pearson, who would, in 1868, become the first Chief Justice in our State ever elected by the people. Specifically, in his first year on the Supreme Court, Justice Pearson reversed a decision he had made earlier that year while serving as a superior court judge, stating, with great humility: "After the argument in this Court, and by the assistance of the great learning and long experience of the Chief Justice and my brother [Frederick] Nash, I have satisfied myself that I was wrong. 'Hard cases are the quick-sands of the law[;]' in other words, a judge sometimes looks so much at the apparent hardship of the case as to overlook the law." Lea v. Johnston, 31 N.C. 15, 18-19 (1848).

USCS makes an argument that it has a vested property right in continued service and that, therefore, the Town of Warsaw's actions are in violation of USCS's due process rights. However, for the reasons stated in this opinion, there could have been no reasonable expectation on the part of USCS to have the right to sewerage service from the Town in perpetuity. Accordingly, we reject this argument.