HUNTER, JR., ROBERT N., Judge, dissenting.
I agree with the majority that "hard cases are the quicksands of the law." Fulghum v. Selma, 238 N.C. 100, 103, 76 S.E.2d 368, 370 (1953). I dissent because I am not convinced it is proper for the Town of Warsaw to discontinue sewage services to USCS under the shadow of "voluntary" annexation.
North Carolina differentiates between the authority of a city operating a public utility within city limits and outside city limits. See N.C. Gen.Stat. § 160A-312 (2013). Generally, towns have no duty to furnish water and sewer services to persons outside the town limits. Fulghum, 238 N.C. at 104-105, 76 S.E.2d at 371. A town may, within its discretion, extend water and sewer services outside the city limits. Id. at 104-105, 76 S.E.2d at 371. However, this differentiation applies to the initial decision to extend a public utility outside city limits, not its operation once it is already in place.
"A public utility, whether publicly or privately owned, may not unreasonably discriminate in the distribution of its services or the establishment of rates." Wall v. City of Durham, 41 N.C.App. 649, 659, 255 S.E.2d 739, 745 (1979) (emphasis added). Reasonable classifications may be based upon cost of service, quantity received, time of use, etc. Id. If a city chooses to extend services outside city limits, it is reasonable to charge a different rate from that charged within the city limits. Fulghum, 238 N.C. at 104-105, 76 S.E.2d at 371. Our Courts have distinguished *580 the aforementioned reasonable classifications from unreasonable classifications, including singling out a person due to an unrelated controversy.
Therefore, I disagree with the majority's reading of Fulghum. The majority quotes Fulghum as stating that the town "retains the authority to specify the terms upon which nonresidents may obtain its water [or sewer service]". Id. at 104, 76 S.E.2d at 371 (emphasis in majority).
*788 However, a fuller reading paints a different picture: "[The town] retains the authority to specify the terms upon which nonresidents may obtain its water. In exerting this authority, it may fix a different rate from that charged within the corporate limits. " Id. at 104, 76 S.E.2d at 371 (emphasis added). Additionally, any terms must be reasonable.
"It is well settled that a privately owned supplier of electric power, or other public service, may not lawfully refuse its service because of a controversy with the applicant concerning a matter which is not related to the service sought." Dale v. City of Morganton, 270 N.C. 567, 572, 155 S.E.2d 136, 141 (1967) (emphasis added). Our Supreme Court adopted this principle after noting it was accepted in other jurisdictions. E.g., Ten Broek v. Miller, 240 Mich. 667, 216 N.W. 385 (1927), Miller v. Roswell Gas & E. Co., 22 N.M. 594, 166 P. 1177 (1917), Seaton Mountain Electric Light v. Idaho Springs, 49 Colo. 122, 111 P. 834 (1910), Hicks v. City of Monroe Utilities Commission, 237 La. 848, 112 So.2d 635 (1959) ; see also 55 A.L.R. 771.
In Dale v. City of Morganton the Court followed this principle and expanded it by applying it to a city.[3] In Dale, a house within the city limits became unfit for habitation and the city prohibited its occupancy. In response, the city refused to provide electricity to the house. Our Supreme Court said:
Whatever may be the right of the city of Morganton, in the exercise of its governmental power, to forbid the occupancy of the plaintiff's house as a human habitation, that is a matter collateral to the duty of the city to supply electric power for use in this structure. A city may not deprive an inhabitant, otherwise entitled thereto, of light, water or other utility service as a means of compelling obedience to its police regulations, however valid and otherwise enforceable those regulations may be.
Dale, 270 N.C. 567, 572-573, 155 S.E.2d 136, 142 (1967). Thus, a provider of a public utility, whether privately or publicly owned may not discontinue its services solely on the basis of a collateral dispute. Additionally, the purpose given for termination of services may not be pretextual in nature. In contrast, service may be discontinued for non-payment or *789 another non-discriminatory purpose related to the provision of the utility. See Big Bear of North Carolina, Inc. v. City of High Point, 294 N.C. 262, 268, 240 S.E.2d 422, 425 (1978).
The majority contends Dale is not applicable because USCS is not an "inhabitant." However, the majority misreads Dale as explicitly distinguishing between persons inside and persons outside municipal limits. The Court uses the term "inhabitant" because the facts of that case involve a person living within city limits. The term "inhabitant" was merely used to refer to the plaintiff, not to exclude any non-inhabitants from the general principle.
In Dale, the Court required the city to address the issue at hand by following the procedural requirements required in the housing code to declare a house unfit for habitation. Dale, 270 N.C. at 576, 155 S.E.2d at 144. The Court reasoned "substantial compliance with these procedures is a condition precedent to the authority of the city to forbid the use of a dwelling house for human habitation." Id. Therefore, the city had to follow the requirements in place to address the housing code violation instead of attempting to address the issue collaterally.
Here, the Town of Warsaw did not have a duty to extend sewer services to USCS.
*581 However, the Town of Warsaw elected to extend a public utility to an area outside the city. As a result of that decision, the town cannot unreasonably discriminate or discontinue services for a reason unrelated to the provision of the utility itself.
The principle that a discontinuance of service cannot be related to a collateral matter is a generally recognized principle that applies to all providers of public utilities without distinguishing between whether they are private, public, or inside or outside of the city limits. Thus, while the Town may discontinue sewer service for non-payment or other reasons related to the provision of sewer service, the town may not cut off service for a collateral dispute. The collateral annexation dispute is the only reason provided by the Town of Warsaw for discontinuing USCS's sanitary sewer services. I find no evidence in the record suggesting a proper purpose related to the provision of the utility for discontinuing the service.
As explained in Dale, another procedure exists to address the town's objective. While I understand annexation of the area including USCS would provide much needed tax revenue for the Town of Warsaw, the North Carolina General Statutes provide the proper procedures for annexation. The town must comply with these procedural requirements in order to annex the area including USCS. The town cannot condition *790 the provision of a public utility on voluntary annexation. It is improper to attempt to address this collateral issue by discontinuing a public utility to USCS.
Finally, conditioning the continued provision of utilities on "voluntary annexation" contravenes the purpose behind the legislature's annexation legislation in 2011. "[I]t is essential for citizens to have an effective voice in annexations initiated by municipalities." N.C. Gen.Stat. § 160A-58.50(6) (2015). The majority sets a dangerous precedent. The continued provision of water, sewer, and electric services should not be used to induce USCS or any other person to seek annexation or face termination of those vital utilities.
USCS also contends the Town of Warsaw violated its substantive due process rights. The North Carolina Supreme Court has long recognized:
[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other question of lesser moment, the latter alone will be determined. It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.
State v. Lueders, 214 N.C. 558, 560-561, 200 S.E. 22, 23 (1938). Our appellate courts exercise judicial restraint in such cases. See Martin v. Thornburg, 320 N.C. 533, 548, 359 S.E.2d 472, 481 (1987).
However, since the majority addresses USCS's constitutional claim, I will address this issue. I am persuaded by USCS's argument that they have a protected property right in the continued provision of sanitary sewer service and that the Town of Warsaw arbitrarily or capriciously deprived them of that property right. See Browning-Ferris v. Wake County, 905 F.Supp. 312, 317-318 (E.D.N.C.1995).
"The inquiry as to whether a party has acquired a vested property right under the common law of North Carolina centers on the party's reliance on a permit, the exercise of good faith, and the incurring of substantial expenditures prior to the revocation of a permit or the amendment to an ordinance". Id. at 318 (citing Simpson v. City of Charlotte, 115 N.C.App. 51, 443 S.E.2d 772 (1994) ). USCS meets all of those requirements and therefore had a vested property right in the continued sewer service.
The next inquiry is whether that property right was deprived without due process of law. "The touchstone of due process is the protection of the individual against arbitrary action of government." County of *791 Sacramento v. Lewis, 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quoting Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) ). In other words, the purpose behind substantive due process is to prevent government abuse of power by "employing it as an instrument of oppression." Id. at 846, 118 S.Ct. at 1716. Here, the government is wielding its power *582 to achieve its objective, violating the very purpose of due process protections. The government is forcing USCS to submit to "voluntary" annexation or lose access to vital utilities. Such arbitrary and capricious government action is in violation of constitutionally protected due process rights. I would reverse the court below.

I disagree with the Town of Warsaw's reading of Dale because the Court took a principle previously only applied to private utilities and expanded it to include municipally owned utilities. This requires an expansive reading of the principle instead of a narrow one as advocated by the town.