### C. B. FULGHUM v. TOWN OF SELMA,
#### and
E. M. GRIFFIS, MRS. JOHN ELLIS, LUTHER CREECH, WOODROW STEVENS, HARRY HILL, MRS. OSCAR MORRIS, HIRAM EASON, AND ALL OTHERS WHO SIGN THIS COMPLAINT AND ALL OTHERS SIMILARLY SITUATED, v. TOWN OF SELMA.

(Filed June 12, 1953.)

**1. Contracts § 11 ½ a—**

Where the parties to a contract calling for continuing performance fix no time for its duration and none can be implied from the nature of the contract or from the surrounding circumstances, the contract is terminable at will by either party on reasonable notice to the other.

**2. Municipal Corporations § 8b (2)—**

A municipality executed a contract with a citizen under which the municipality was to furnish water to such citizen for distribution through his pipes to consumers in an adjacent village, and charge such citizen therefor the rate charged consumers within its corporate limits. The agreement fixed no time for the duration of the contract. *Held:* Either party could terminate the contract at will by giving reasonable notice to the other party.

**3. Same—**

A municipality which operates its own water works is under no duty to furnish water to persons outside its limits but has the discretionary power to do so. G.S. 160-255.

**4. Same—**

A municipality which undertakes to furnish water to persons outside its corporate limits does not assume the obligations of a public service corporation toward such nonresidents, but retains the authority to specify the terms under which they may obtain water and to fix rates different from those charged consumers within its limits. G.S. 62-30 (3), G.S. 160-256.

**5. Same—**

An amendment to an ordinance which substantially increases the rates charged for water supplied by a municipality for consumption outside its corporate limits cannot be held discriminatory in a legal sense when it applies alike to all nonresidents, and it is immaterial that a nonresident consumer deems such rates exorbitant or unreasonable.

**6. Municipal Corporations § 8b (1)—**

Defendant municipality sold water to an individual at a meter just inside its limits, and such individual resold the water through his own pipes to consumers outside the city limits. By amendment to its ordinances, the municipality greatly increased the rates charged such individual. *Held:* Such individual, even though a resident of the municipality, may not maintain that the city is under duty to furnish him water at the same rate furnished consumers within the corporate limits, since the municipality owes no duty to supply water to a resident for resale to others either within or without its limits.

**7. Evidence § 2—**

Courts will not take judicial notice of municipal ordinances.

APPEAL by plaintiffs from *Burgwyn, Special Judge,* at January Term, 1953, of JOHNSTON.

Consolidated civil actions to enjoin a municipality from cutting off a plaintiff's water supply, or charging him a water rate alleged to be discriminatory, exorbitant, and unreasonable.

The facts are stated in ultimate terms in the numbered paragraphs set forth below.

1. The defendant Town of Selma is a municipality in Johnston County.

2. A settled community known as Selma Mill Village abuts the outside boundaries of the defendant to the westward.

3. The defendant has owned and operated a waterworks system for many years.

4. The defendant furnishes water to its own residents for domestic and manufacturing purposes.

5. The defendant likewise supplies water through its own water mains for similar uses to nearby nonresidents other than the inhabitants of Selma Mill Village.

6. The defendant charges consumers of water residing within its corporate limits these monthly water rates: 5,000 gallons or less, $1.50; 5,000 to 55,000 gallons, 20 cents per 1,000 gallons; and over 55,000 gallons, 15 cents per 1,000 gallons.

7. The defendant charged its nonresident water customers the same rates as its resident consumers until 20 May, 1952.

8. The defendant sank a deep well near Selma Mill Village during 1948 to augment its town water supply. This operation substantially lowered the water level in the community, making it impossible for inhabitants of Selma Mill Village to obtain water by means of shallow wells.

9. The proposal to dig the deep well mentioned in the preceding paragraph was first broached during 1946. At that time inhabitants of Selma Mill Village requested the defendant to extend its water mains to Selma Mill Village and furnish them water.

10. The defendant declined to comply with this request. But the defendant made a contemporary contract with the plaintiff C. B. Fulghum, who resides in the Town of Selma and operates a grocery store in Selma Mill Village, whereby it agreed to supply water to Fulghum at a meter inside its corporate limits at the rates specified in paragraph six, and to permit Fulghum to convey the water through pipes of his own to Selma Mill Village for resale to its inhabitants for his own benefit. The contract did not fix the time of its duration.

11. Fulghum forthwith installed pipe lines at his own expense connecting the places of business and residences of inhabitants of Selma Mill Village desiring water service with the defendant's water mains at a meter just inside the corporate limits.

12. Fulghum completed his installations in 1946. Since that time the defendant has supplied water to Fulghum at the meter just inside the corporate limits, and Fulghum has distributed the water through his own pipe lines to the buildings of inhabitants of Selma Mill Village desiring water service. At the time of the commencement of these actions, Fulghum was distributing a total of 80,000 gallons of water each month to 42 buildings in Selma Mill Village, and was charging $2.00 for each building per month for so doing. Fulghum paid defendant the rates specified in paragraph six for all water supplied to him before 20 May, 1952.

13. On 2 May, 1952, the defendant adopted an ordinance establishing these rates for water supplied by it for consumption outside its corporate limits "on and after the 20th day of May, 1952": 5,000 gallons or less, $1.50; and over 5,000 gallons, $1.00 per 1,000 gallons. On 7 July, 1952, the defendant amended this ordinance by making the flat rate for the first 5,000 gallons or less $2.00 instead of $1.50. The defendant gave immediate notice of the enactments to Fulghum, the only person who buys water from the defendant for resale to others.

14. Fulghum has consistently denied the validity of the ordinance and the amendment, and has constantly offered to pay the defendant for the water supplied him since 19 May, 1952, at the rates specified in paragraph six. The defendant has consistently refused to accept the payments tendered by Fulghum, and has repeatedly threatened to cut off Fulghum's water supply because of his refusal to pay for the water supplied him since 19 May, 1952, at the higher rates fixed by the ordinance and the amendment.

15. These two actions arose out of the controversy set out in the preceding paragraph. The first action was brought against the defendant by Fulghum himself, and the second action was brought against the defendant by Luther Creech, Hiram Eason, Mrs. John Ellis, Mrs. John T. Evans, Mrs. Lela Evans, E. M. Griffis, Dina Hall, Minnie Hall, Harry Hill, Mrs. Harry Hill, M. H. Howell, Add Mitchell, Jr., Mrs. Add Mitchell, Jr., Mrs. Oscar Morris, T. R. Philyan, Mrs. Ted Poole, W. G. Radford, Charlie Starling, Woodrow Stevens, Mrs. Ed. Taylor, and Mrs. W. H. Thompson, inhabitants of Selma Mill Village who receive water through Fulghum's pipes. Judicial orders were entered in the actions restraining the defendant from cutting off Fulghum's water supply pending trials on the merits.

16. The complaints alleged in detail that the defendant enacted the ordinance of 2 May, 1952, and the amendment of 7 July, 1952, to coerce Fulghum to abandon his water service to the inhabitants of Selma Mill Village, and to transfer his pipe lines to the defendant at a sacrifice; and that the ordinance and the amendment were void because they violated the contract made between Fulghum and the defendant in 1946 and because the water rates fixed by them were discriminatory, exorbitant, and unreasonable. The complaints prayed, in substance, that the ordinance and the amendment be adjudged void; that the defendant be enjoined from charging Fulghum the rates fixed by them; and that the defendant be restrained from cutting off Fulghum's water supply. The answers denied the validity of the claims asserted in the complaints.

When the actions were called at the January Term, 1953, of the Superior Court of Johnston County, they were consolidated by consent for trial and judgment. The plaintiffs offered testimony sufficient to establish the matters stated in paragraphs one to fourteen, both inclusive. When the plaintiffs had produced their evidence and rested their case, the defendant moved that the consolidated actions be dismissed upon a compulsory nonsuit. The presiding judge allowed the motion, and entered judgment accordingly. The plaintiffs excepted and appealed.

*Lyon & Lyon for plaintiffs, appellants.*
*W. I. Godwin and Wellons, Martin & Wellons for defendant, appellee.*

ERVIN, J. There may be more than a modicum of truth in the assertion of the plaintiffs that the defendant enacted the ordinance and its amendment for the coercive purpose of inducing Fulghum to abandon his water service to the inhabitants of Selma Mill Village and transfer his pipe lines to the defendant at less than their value. Be this as it may, we must remember that hard cases are the quicksands of the law and confine ourselves to our appointed task of declaring the legal rights of the parties.

The crucial question raised by the appeal is this: Does the evidence of the plaintiffs suffice to show that Fulghum has the legal right to compel the Town of Selma to supply water to him at the rates charged consumers within its corporate limits for resale beyond its boundaries?

The plaintiffs insist initially that this question must be answered in the affirmative on the ground that the contract made by Fulghum with the Town of Selma in 1946 gives Fulghum this legal right.

This contention does not take certain controlling factors into account. The evidence discloses that Fulghum and the Town of Selma did not fix the time for the duration of the contract; that there was nothing in the inherent nature of the contract or the surrounding circumstances to indi-

cate that Fulghum and the Town of Selma intended the contract to be perpetual or to continue for any ascertainable period of time; that the Town of Selma manifested its intention to put an end to the contract by adopting the ordinance and the amendment in controversy; and that the Town of Selma gave Fulghum due notice of its intention to terminate the contract. This being true, the evidence of the plaintiffs affirmatively reveals that the contract invoked by them has been lawfully terminated under this rule: Where the parties to a contract calling for a continuing performance fix no time for its duration and none can be implied from the nature of the contract or from the surrounding circumstances, the contract is terminable at will by either party on reasonable notice to the other. *Joliet Bottling Co. v. Joliet Citizens' Brewing Co.,* 254 Ill. 215, 98 N.E. 263; *Scott v. Dedham Water Co.,* 224 Mass. 398, 113 N.E. 282; *Barish v. Chrysler Corp.,* 141 Neb. 157, 3 N.W. 2d 91; Williston on Contracts (Rev. Ed.), section 38; 12 Am. Jur., Contracts, section 305; 17 C.J.S., Contracts, section 398; 67 C.J., Waters, section 747.

The precise question now before us was presented to the South Carolina Supreme Court upon virtually identical facts in *Childs v. Columbia,* 87 S.C. 566, 70 S.E. 296, 34 L.R.A. (N.S.) 542. In rejecting a contention similar to that now advanced by the plaintiffs, the South Carolina Supreme Court used these incisive words: "But . . . there is no allegation whatever that the plaintiff was bound to take, or the city was bound to furnish, water for any specified time. When the parties to a contract express no period for its duration, and no definite time can be implied from the nature of the contract or from the circumstances surrounding them, it would be unreasonable to impute to the parties an intention to make a contract binding themselves perpetually. In such a case the courts hold with practical unanimity that the only reasonable intention that can be imputed to the parties is that the contract may be terminated by either, on giving reasonable notice of his intention to the other."

The plaintiffs maintain secondarily that their evidence is sufficient to establish a legal right in Fulghum to the relief sought irrespective of the matter of contract right. They argue in this connection that when the Town of Selma established its water works and undertook to distribute water for compensation, it became the legal duty of the Town of Selma to supply Fulghum water for any purpose at the same rates as those charged consumers residing within its corporate limits.

This position is clearly insupportable if Fulghum is assigned the status of a nonresident because of his business activities in Selma Mill Village.

A municipality which operates its own water works is under no duty in the first instance to furnish water to persons outside its limits. It has the discretionary power, however, to engage in this undertaking. G.S. 160-255. When a municipality exercises this discretionary power, it does

not assume the obligations of a public service corporation toward nonresident consumers. G.S. 62-30 (3); 67 C.J., Waters, section 739. It retains the authority to specify the terms upon which nonresidents may obtain its water. *Construction Co. v. Raleigh,* 230 N.C. 365, 53 S.E. 2d 165. In exerting this authority, it "may fix a different rate from that charged within the corporate limits." G.S. 160-256.

The rates fixed by the ordinance and the amendment for water supplied by the Town of Selma for consumption outside its corporate limits are not discriminatory in a legal sense. They apply alike to all nonresidents who purchase town water. The Town of Selma was empowered by law to make these rates different from those charged within its corporate limits. Since a nonresident must pay the uniform rates fixed by the Town of Selma for other nonresidents in order to obtain town water, it is immaterial that he deems such rates to be exorbitant or unreasonable. *Construction Co. v. Raleigh, supra; Childs v. Columbia, supra.*

The legal position of Fulghum is not bettered a single whit on the present record if he is assigned the status of a resident of the Town of Selma because his home is within its boundaries.

When a municipality engages in supplying water to its inhabitants, it owes the duty of equal service in furnishing water only to consumers within its corporate limits. It is under no legal obligation to supply water to a resident for resale to others either within or without its municipal limits. *Brand v. Board of Water Commissioners of Town of Billerica,* 242 Mass. 223, 136 N.E. 389.

Fulghum does not seek to have the water in controversy furnished to him as a consumer residing within the boundaries of the Town of Selma. His sole purpose is to resell the water to persons living outside its corporate limits. This being true, he cannot complain of the refusal of the Town of Selma to furnish him the water in controversy at the same rate charged resident consumers of the same quantity of water.

We cannot take judicial notice of municipal ordinances. 31 C.J.S., Evidence, section 27. In consequence, we have ignored the ordinance allegedly adopted by the defendant on 7 November, 1952.

Our decision on the compulsory nonsuit precludes a discussion of the other questions debated by the parties.

For the reasons given, the compulsory nonsuit is

Affirmed.