UNIVERSITY OF NORTH CAROLINA, KNOWN AS THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL v. THE TOWN OF CARRBORO

No. 7215SC435

(Filed 2 August 1972)

1. **Colleges and Universities; Municipal Corporations § 4— authority of U.N.C. to operate water system — rates**

    The University of North Carolina has authority to own, maintain and operate a water system to provide services for itself and any other person, firm or corporation desiring such services, and has the discretionary authority to set the rates which it will charge for such service. G.S. 116-3; former G.S. 160-255.

2. **Municipal Corporations § 22— necessity for written contract — purchase of water from U.N.C.**

    The statute requiring certain contracts of municipal corporations to be in writing, former G.S. 160-279, did not apply to the purchase of water by the Town of Carrboro from the University of North Carolina.

APPEAL by defendant from *Wood, Judge,* 17 January 1972 Session of Superior Court held in ORANGE County.

This is a civil action wherein the University of North Carolina (University) seeks to recover from the Town of Carrboro (Carrboro) the purchase price of water and electricity for the billing period 11 July 1970 through 6 August 1970.

The following facts are uncontroverted. The University owns and operates an electric and water distribution system and has sold water and electricity to the Town of Carrboro, a municipal corporation, continuously since 1922 or 1923. Carrboro resells the said water and electricity to its residents. There has never been a written contract between the parties for this service. The plaintiff has delivered and defendant has accepted and paid for said water and electricity on a monthly basis beginning about 1922 or 1923 and continuing until August 1970. On 14 May 1970 the University notified Carrboro in writing of increases in the rate for water sold the Town as of the meter reading on or after 1 August 1970. Thereafter the University delivered and Carrboro accepted water and electricity for which the University billed the defendant but the defendant refused to pay for said services under the new rates. Carrboro tendered payment on the account under the old rates but the University would not accept such payment. Carrboro made a $90.65 payment on the account which was accepted by the University.

Both parties filed motions for summary judgment along with supporting affidavits under Rule 56. On 20 January 1972 the Court entered summary judgment for plaintiff in the total sum of $8,464.60. The defendant appealed.

*Attorney General Robert Morgan and Assistant Attorneys General Millard R. Rich, Jr., and I. Beverly Lake, Jr., for the plaintiff appellee.*

*William W. Staton and Lowry M. Betts for the defendant appellant.*

HEDRICK, Judge.

The pleadings, exhibits, and affidavits show there is no genuine issue as to the amount and price of water and electric service delivered by the plaintiff and accepted by the defendant for the billing period covered by statements mailed 18 August 1970 and 21 August 1970, and that $90.65 was credited to the account. Therefore, since all of the material facts are established by the record, the one question presented on this appeal is whether, on such facts, the University is entitled to judgment as a matter of law. G.S. 1A-1, Rule 56; *Kessing v. Mortgage Corp.,* 278 N.C. 523, 180 S.E. 2d 823 (1971).

[1]  The main thrust of defendant's argument is that the University lacked authority to set rates for the sale of its water to the Town of Carrboro, and that said rates are "discriminatory per se." We do not agree. G.S. 116-3 in pertinent part provides, "The trustees of the University shall be a body politic and corporate . . . (and) shall be able and capable in law . . . to do all such things as are usually done by bodies corporate and politic. . . . " G.S. 160-255 prior to its repeal by Session Laws 1971, c. 698, s. 2, effective 1 January 1972, in pertinent part provided:

> "A municipality may own and maintain its own light, water, sewer, and gas systems to furnish services to the municipality and its citizens, and to any person, firm or corporation desiring the same outside the corporate limits where the service can be made available by the municipality . . . . "

Thus, it seems clear that the University as a body politic and corporate has authority to own, maintain, and operate a water system to provide services for itself and to any other person, firm, or corporation desiring such services outside the University.

> "A municipality which operates its own water works is under no duty in the first instance to furnish water to persons outside its limits. It has the discretionary power, however, to engage in this undertaking. G.S. 160-255. When a municipality exercises this discretionary power, it does not assume the obligations of a public service corporation toward nonresident consumers. G.S. 62-30(3) ; 67 C.J., Waters, section 739. It retains the authority to specify the terms upon which nonresidents may obtain its water. *Construction Co. v. Raleigh,* 230 N.C. 365, 53 S.E. 2d 165. In exerting this authority, it 'may fix a different rate from that charged within the corporate limits'. G.S. 160-256" *Fulghum v. Selma* and *Griffis v. Selma,* 238 N.C. 100, 76 S.E. 2d 368 (1953).

Thus, the University is under no obligation to maintain a water system for the Town of Carrboro, Chapel Hill, or any other person, firm, or corporation other than itself; however, having exercised its discretion to do so, we think it likewise has discretionary authority to set the rates which it will charge for such services. The defendant, having accepted these services

for almost half a century is not now in a position to complain about the rates.

[2]   Finally, the defendant contends that the Court erred in concluding that G.S. 160-279 does not apply to this action. G.S. 160-279 prior to its repeal by Session Laws 1971, c. 698, s. 2, effective 1 January 1972, in pertinent part provided:

> *"Certain contracts in writing and secured.*—All contracts made by any department, board, or commission in which the amount involved is two hundred dollars or more shall be in writing, and no such contract shall be deemed to have been made or executed until signed by the officer authorized by law to sign such contract, approved by the governing body. Any contract made as aforesaid may be required to be accompanied by a bond with sureties. . . . "

By this contention the defendant attempts to call to its aid to defeat plaintiff's claim a statute which, if applicable, it has openly violated for more than 50 years. It is readily apparent that the statute refers only to "certain contracts" and not to all contracts involving a municipality or one of its agencies. Obviously, the defendant could not have required the University to give a bond with sureties for the faithful performance of its contract to deliver water to the defendant.

We think the trial Court correctly held that the statute has no application under the facts of this case. The judgment appealed from is

Affirmed.

Judges BROCK and MORRIS concur.