I dissent from the holding of the majority and would vote to AFFIRM the Interlocutory Opinion and Award filed by the Chief Deputy Commissioner.
I concur fully with the majority that Lemly is controlling law. Lemly
holds that the Industrial Commission may review and approve a written "settlement agreement" reached between the parties where one party, either the plaintiff or the defendants, purports to withdraw its approval of the settlement agreement subsequent to its execution. In this case, the Mediation Settlement Agreement dated May 1, 2001 meets all of theLemly requirements to constitute a "settlement agreement" that may be approved by the Industrial Commission.
I dissent as to the majority's holding that the County Manager and his designees were not fully authorized to negotiate and bind Wake County to the settlement between the parties as their authority to bind Wake County was limited to claims not in excess of $100,000.00.
The majority opinion contends that the affidavit of Camden Frazier dated January 17, 2002 proves by "inference" the existence and the terms of Wake County's Budget Ordinances purportedly limiting the Wake County manager or his designee to enter into settlement agreements up to $100,000.00 without first obtaining approval of the Wake County Board of Commissioners. This finding of fact is not supported by any competent evidence.
There are two budget ordinances that would appear applicable to the facts of this case. The first ordinance is the Wake County Budget Ordinance for the Fiscal Year 2001-2002. Section 15 (emphasis added) of this Ordinance provides:
 The County Manager, or his designee, may authorize payment in an amount not to exceed $100,000 in settlement of any liability claims against the County or against any of its officers or employees as provided by Resolution of May 20, 1995. The County Manager shall make quarterly reports to the Board of Commissioners of any such payments.
Section 15 addresses "liability claims" and does not mention "workers' compensation claims."
The second Ordinance is that of May 20, 1995 that is referenced in the Fiscal Year 2001-2002 Ordinance. The 1995 Ordinance is not in evidence. The majority opinion recognizes the applicable law that the Industrial Commission can take judicial notice of a public act upon request and when provided with the necessary information, N.C. Gen. Stat. § 8C-1, Rule 201(d), the Industrial Commission may not take judicial notice of county ordinances. State v. Atlas, 283 N.C. 165, 195 S.E.2d 496 (1973); Fulghumv. Selma, 238 N.C. 100, 76 S.E.2d 368 (1953).
N.C. Gen. Stat. § 153A-50 controls proof of the 1995 Wake County Budget Ordinance and specifically provides:
 County ordinances shall be pleaded and proved under the rules and procedures of G.S. 160A-79. References to G.S. 160A-77 and G.S. 160A-78 appearing in G.S. 160A-79
are deemed, for purposes of this section, to refer to G.S. 153A-49 and G.S. 153A-48, respectively.
In turn, N.C. Gen. Stat. § 160A-79 provides in pertinent part:
 b) Any of the following shall be admitted in evidence in all actions or proceedings before courts or administrative bodies and shall have the same force and effect as would an original ordinance:
 (1) A city code adopted and issued in compliance with G.S. 160A-77, containing a statement that the code is published by order of the council.
. . .
 (3) A copy of an ordinance as set out in the minutes, code, or ordinance book of the council, certified under seal by the city clerk as a true copy (the clerk's certificate need not be authenticated).
 (4) Copies of any official lists or schedules maintained in accordance with G.S. 160A-77 and certified under seal by the city clerk as having been adopted by the council and maintained in accordance with its directions (the clerk's certificate need not be authenticated).
The affidavit of Camden Frazier meets none of these requirements as to the Ordinance of May 20, 1995. The 1995 Ordinance may or may not clarify that the County Manager or his designee was limited to $100,000 in a workers' compensation action as opposed to a "liability claim." On the record in this case, there is simply no competent evidence to establish the true state of the facts. As the Wake County 1995 Ordinance is not before the Industrial Commission, the majority errs in permitting "inferences."
Equally compelling is the fact that during the hearing of this action before the Full Commission, Wake County was informed that the record could be reopened to permit the taking of additional evidence. Wake County did not petition the Full Commission to reopen the record to introduce the 1995 Budget Ordinance.
The majority also cites Rule 4(a)(1)(d) of the North Carolina Industrial Commission Rules for Mediated Settlement and Neutral Evaluation Conferences for the proposition that plaintiff was on notice that the Wake County Board of Commissioners had to approve the settlement agreement. The Rule provides:
 Any party that is a governmental entity shall be represented at the conference by an employee or agent who is not such party's outside counsel or Attorney General's Office counsel responsible for the case and who has authority to decide on behalf of such party whether and on what terms to settle the action; provided, if under law, proposed settlement terms can be approved only by a board, the representative shall have authority to negotiate on behalf of the party and to make a recommendation to that board.
The Rule simply recognizes that representatives of a board of county commissioners may or may not be authorized to reach binding agreements. Boards of county commissioners may fully authorize designees to negotiate binding settlements. Based on the facts of this case it appeared that Wake County's representative at the multiple mediation settlement conferences was fully authorized to enter into a binding settlement. In addition, there is nothing in the actual mediated settlement agreement denoting that Wake County's representative was limited in authority. This entire controversy could have easily been avoided if Wake County's representatives had simply denoted their limited authority in the written settlement agreement. Not having done so, Wake County should not be permitted to escape their legal obligations, particularly since Wake County's conduct was misleading and "reprehensible" as found by the majority.
Because the 1995 Budget Ordinance purportedly limiting the Wake County manager's authority to enter into binding settlements is not before the Full Commission, the greater weight of the evidence compels the conclusion that the parties signing the Mediation Settlement Agreement on May 1, 2001 were fully authorized to do so.
The majority further holds that because a preaudit certificate was not attached to the Mediated Settlement Agreement as required by N.C. Gen. Stat § 159-28 there was no valid contract and therefore plaintiff cannot recover under equitable estoppel. The evidence of record does not support this conclusion of law.
First, it is not entirely clear that the preaudit certificate is required in this case. The Industrial Commission routinely approves hundreds of Settlement Agreements every year in which counties are party defendants. There is not one case known to this Commissioner in which a preaudit certificate has been appended to a Settlement Agreement. The conclusion of law reached by the majority opinion would produce the untoward result that any settlement agreement submitted by the county and approved by the Industrial Commission is unenforceable.
Second, assuming that N.C. Gen. Stat. § 159-28 does apply it does not follow that the preaudit certificate could not be issued in this case. The preaudit certificate process is required by the General Assembly to ensure only that a county may incur no obligation unless "the budget ordinance includes an appropriation authorizing the obligation and an unencumbered balance remains in the appropriation sufficient to pay the current fiscal year the sums obligation by the transaction for the current fiscal year." N.C. Gen. Stat. § 159-28. The objective of the statute is twofold; prohibit expenditures that have not been budgeted by the county and, additionally, prohibit a county from deficit expenditures under any circumstances.
There is no evidence in the record before the Full Commission that the obligation to the plaintiff in this case had not been properly included in an appropriation or that payment of the obligation to the plaintiff in this case would have resulted in deficit financing. At the hearing before the Deputy Commissioner and the Full Commission, Wake County relied largely on the defense that a Mediated Settlement Agreement could not constitute an enforceable settlement agreement under any circumstances. The decision in Lemly is contrary to Wake County's position as held by the majority.
The majority cites Data Gen. Corp. v. Cty. of Durham in support of its holding that equitable estoppel cannot be applied in the case before the Full Commission. The Data court's holding that relied on the fact that the county in that case "has not expressly entered a valid contract."Data, 143 N.C. App. at 104, ___ S.E.2d at ___. Finding that a valid contract in the present action distinguishes Data from the facts before the Full Commission.
Our appellate courts have held that equitable estoppel may apply to governmental entities.
 We recognize that counties are not subject to an estoppel to the same extent as a private individual or a private corporation. See Henderson v. Gill, Comr. of Revenue, 229 N.C. 313, 49 S.E.2d 754 (1948). Otherwise a county could be estopped from exercising a governmental right. Id. However, a governmental entity may be estopped if it is necessary to prevent loss to another and the estoppel will not impair the exercise of governmental powers. Washington v. McLawhorn, 237 N.C. 449, 454, 75 S.E.2d 402, 406 (1953).
Land-of-Sky Regional Council v. Henderson County, 78 N.C. App. 85, 91,336 S.E.2d 653, 657 (1985) (hereinafter "Land-of-Sky"). While "Land-of-Sky" is distinguishable from the facts of the case before the Full Commission, it does suggest that county governments may not entirely elude equity.
The equities in this case lie squarely with the plaintiff. As the majority finds:
 The conduct of defendant's representative in this case in failing to notify plaintiff of the limited settlement authority delegated by the Board of County Commissioner was reprehensible and clearly misleading and the equities undoubtedly reside with the plaintiff, who relied on the promises of defendant's representatives.
It should be noted that the parties engaged in several mediations over an extended period before an agreement was reached. Additionally, the Wake County officials never indicated an intention not to honor its agreements until its excess insurance carrier, who was present at the mediation and indisputably consented to the settlement agreement, repudiated the agreement. The Wake County Board of Commissioners did not adopt a resolution specifically disapproving the settlement agreement until after the Chief Deputy Commissioner issued the Interlocutory Opinion and Award on June 3, 2002.
I would add to the finding of the majority the observation of an American political sage:
 The moral test of government is how it treats those who are in the dawn of life, the children; those who are in the twilight of life, the aged; and those who are in the shadows of life, the sick, the needy, and the handicapped.
Wake County has obviously failed the "moral test" in its treatment of Melva Lee.
Believing that both the law and equity of this case support the conclusion that representatives of Wake County entered into a valid contract, I vote to AFFIRM the decision of the Chief Deputy Commissioner.
This the 16th day of June 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN