UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

THE SOUTHSIDE TRUST; THOMAS E.
TILLEY,

　　　　　　*Plaintiffs-Appellants,*

　　　　　　v.

TOWN OF FUQUAY-VARINA; JOHN
ELLIS, in his capacity as Mayor for
the Town of Fuquay-Varina, and
individually; LARRY W. BENNETT, in
his capacity as Town Manager for
the Town of Fuquay-Varina, and
individually; RACHEL TURNER, in her
capacity as Town Clerk and Finance
Director for the Town of Fuquay-
Varina, and individually, W. MARK
CUMALANDER, in his capacity as
Attorney for the Town of Fuquay-
Varina, and individually; MICHAEL
SORENSEN, in his capacity as
Planning Director for the Town of
Fuquay-Varina, and individually;
DOES 1-10, in their capacity as
Commissioners for the Town of
Fuquay-Varina who voted to impose
three times the "in town" sewage
rate upon the Park and/or a double
rate upon Chandler Ridge
Apartments, and individually,

　　　　　　*Defendants-Appellees.*

No. 02-1292

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-00-248-5-BO(2))

Argued: April 3, 2003

Decided: June 23, 2003

Before WILLIAMS and MICHAEL, Circuit Judges,
and Terry L. WOOTEN, United States District Judge
for the District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Donald M. Brown, Jr., Charlotte, North Carolina, for
Appellants. Susan K. Burkhart, CRANFILL, SUMNER & HART-
ZOG, L.L.P., Raleigh, North Carolina, for Appellees. **ON BRIEF:**
Cathi J. Hunt, CRANFILL, SUMNER & HARTZOG, L.L.P.,
Raleigh, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

   For several years the plaintiffs, The Southside Trust and its trustee,
Thomas E. Tilley, have been underpaying and disputing the sewer
bills the Town of Fuquay-Varina, North Carolina, sends them for ser-
vice provided to a trailer park owned by the trust. The trust and Tilley
have sued Fuquay-Varina and several of its officials, claiming that the
town's billing and collection practices have violated the trust's consti-
tutional rights. The district court granted summary judgment for the
town and its officials, and we affirm.

## I.

The Southside Trust ("Southside") owns Southside Mobile Home Park ("the park"), which is located outside Fuquay-Varina ("the town"). Sometime in 1994 the park's wastewater system began to fail. One of the park's managers, Bruce Tilley, asked the town to provide sewer service, and in 1996 the town agreed to provide it. The town sent a letter to Southside noting that the park would be "charged in accordance to the current Water/Sewer Ordinance." The ordinance created a three-zone sewage rate system. Customers within the town boundaries paid the base rate; customers in the perimunicipal area, the zone immediately outside the town boundaries, paid double the in-town rate; and customers outside of the perimunicipal area, including Southside, paid triple rates.

Southside connected to the town sewer system in August 1997. When the first bill arrived, Bruce Tilley refused to pay the triple rate and sent payment for what the bill would have been if the town had charged the double rate, a difference of close to $10,000. Southside persisted in its refusal to pay the triple rate. Moreover, Southside soon concluded that it was being charged for about 65 percent more sewage than it was actually discharging. Southside's agreement with the town provided that Southside would install a wastewater meter. The meter Southside installed did not work well and was apparently causing the incorrect readings. Eventually, the meter was fixed and the town adjusted the rate to make up for the overcharges; the town, however, did not provide Southside with its calculations. Southside continued to refuse to pay the full amount the town said was owed.

Southside and the town exchanged several letters over the course of 1998. Each time, Southside claimed it was being overcharged and refused to pay the full amount, and each time, the town demanded full payment. In February 1999 the town manager wrote to Southside saying that if it did not pay its arrearages by March 22, he would "appear before the Utilities Commission to request that all water service to your park be discontinued so that the town will no longer accept wastewater discharge." Eventually, the town reduced the rates to double the in-town rate, but this did not resolve the arrearage dispute.

In March 2000 the town sued Southside in state court for breach of contract and unjust enrichment to recover the unpaid fees, which

by then totaled $66,786.98. A week later, Southside brought this action in U.S. district court against the town and several of its officials in their official and individual capacities, alleging various constitutional violations. Southside then removed the town's case to federal court, and the cases were consolidated. The town moved for summary judgment on all claims, including its own state law claims against Southside. The district court granted summary judgment on the merits for the town and its officials on Southside's claims; in the alternative, the court held that the town officials were entitled to qualified immunity on Southside's claims against them in their individual capacities. The district court then remanded the town's claims against Southside to state court. Southside appeals the district court's grant of summary judgment to the town and its officials (in their official capacities) on Southside's procedural due process claim. Southside thus does not challenge the district court's qualified immunity ruling. We review the district court's grant of summary judgment de novo. *Bass v. E.I DuPont de Nemours & Co.*, 324 F.3d 761, 766 (4th Cir. 2003). Summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-52 (1986).

## II.

"The Fourteenth Amendment places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978). In general, to prove a procedural due process violation, a plaintiff must show that (1) it has a property interest, (2) it was deprived of that interest, and (3) the deprivation occurred without due process of law. *Tri-County Paving, Inc. v. Ashe County*, 281 F.3d 430, 436 (4th Cir. 2002). Southside relies on *Memphis Light*, which holds that a public utility customer may have a property interest in continued service, and the Due Process Clause may require the utility to provide a hearing before cutting off service.

The problem here is that Southside has not shown that it has a protected property right in continued sewer service. Property rights are

created not by the Constitution itself but by "an independent source such as state law." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). The Constitution's due process guarantee protects non-tangible property rights, like employment, welfare benefits, or utility services, when applicable law mandates that such rights may be terminated or withheld only for cause. Thus, a person claiming a property interest in a governmental benefit "must . . . have a legitimate claim of entitlement." *Gardner v. City of Baltimore*, 969 F.2d 63, 68 (4th Cir. 1992) (quoting *Roth*, 408 U.S. at 577). By contrast, if the government may refuse to provide the benefit at will, without any constraints on its reasons, then the benefit is not a protected property interest, and no process is due. *See Memphis Light*, 436 U.S. at 11-12 & n.11.

Under North Carolina law, municipalities are under no obligation to provide sewer service to those living outside corporate limits. *Atl. Const. Co. v. City of Raleigh*, 53 S.E.2d 165, 168 (N.C. 1949). Southside has offered us no reason to believe that a municipality like Fuquay-Varina that chooses to provide sewer service to out-of-town customers takes on any obligation to continue that service. *Accord* N.C.G.S. § 62-3(23)(d) (Lexis 2001) (excluding municipalities from the definition of "public utility" subject to regulation by North Carolina Utilities Commission); *Fulghum v. Town of Selma*, 76 S.E.2d 368, 371 (N.C. 1953) ("When a municipality exercises [the power to offer services to nonresidents], it does not assume the obligations of a public service corporation toward nonresident customers."). Fuquay-Varina, as far as state law is concerned, may terminate sewer service to nonresidents at will. Here, it is bound only by its contract with Southside. The utility company in *Memphis Light*, by contrast, was obligated under Tennessee law to continue service to the plaintiffs unless it had cause to terminate. *Memphis Light*, 436 U.S. at 9-11. The plaintiffs in *Memphis Light* therefore had a property right in continued service and could claim the constitutional guarantee of due process. Southside has not offered proof to show that it has a similar property right; it has only offered proof of contract rights, which are not protected by the Due Process Clause.

Even if Southside has a property right in continued sewer service, it has not shown, or even alleged, that it has been deprived of that property. While *Memphis Light* is clear that customers with an entitle-

ment to continued utility service have the right to a hearing before service is terminated, *id.* at 19-20, that right is not violated until service is actually cut off. The constitutional violation is not the failure to provide a hearing, but the act of cutting off service without a hearing — the deprivation of property without due process. *Cf. Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*.").

In the present case, sewer service to the park was never terminated. If a plaintiff still has utility service, but shows that it will be cut off before there is a chance for a hearing, he may have a claim under *Memphis Light*. Southside, however, has not shown that termination is imminent. Although the town threatened in a February 1999 letter to cut off sewer service to Southside, the record shows that the dispute was still ongoing, and the town was still providing sewer service, in January 2001, about two years after the letter. There has been no suggestion in this appeal that the situation is any different today. Furthermore, it appears that the town would run into problems with the State of North Carolina and Wake County if it cut off Southside's sewer service. According to an affidavit from a supervisor at the county water quality office, "[t]he [North Carolina] Department of Environment and Natural Resources and Wake County Department of Environmental Services will not permit the Town of Fuquay-Varina, without order of the court, to disconnect the sewage services to Southside Mobile Home Park because untreated sewage may be discharged in Mill Branch." In short, Southside has not shown that there is an imminent danger of the termination of its sewer service, let alone termination without a hearing.

Because Southside has not shown that it can establish the elements of a procedural due process violation, the district court did not err in granting summary judgment to the town and its officials. The judgment is therefore affirmed.

*AFFIRMED*