IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 15-341

Filed: 5 April 2016

Duplin County, No. 13 CVS 848

UNITED STATES COLD STORAGE, INC., Plaintiff,

v.

TOWN OF WARSAW, a North Carolina Municipal Corporation, Defendant.

Appeal by Plaintiff from order entered 24 October 2014 by Judge W. Douglas Parsons in Duplin County Superior Court. Heard in the Court of Appeals 24 September 2015.

*The Brough Law Firm, PLLC, by Robert E. Hornik, Jr., for Plaintiff-Appellant.*

*Thompson & Thompson, P.C., by E.C. Thompson, III, for Defendant-Appellee.*

DILLON, Judge.

United States Cold Storage ("USCS") appeals from a declaratory judgment allowing the Town of Warsaw to terminate sanitary sewer services to its facility, which is located outside the corporate limits of the Town of Warsaw. For the following reasons, we affirm.

I. Background

USCS owns a facility in Duplin County outside the corporate limits of the Town of Warsaw. USCS filed a complaint seeking a declaratory judgment alleging the following facts:

USCS operates cold storage and refrigeration facilities in a number of states. In 1995, USCS entered into an agreement with Duplin County to purchase a tract of land from the County on which to construct a large refrigerated warehouse facility. The agreement required Duplin County to pay for the extension of public water and sewer lines to the location where the facility would be built. The Town of Warsaw provided water and sewer services to the part of the county where the facility was to be located.

The 1995 agreement between USCS and Duplin County also contained a "no annexation provision" whereby Duplin County agreed to obtain a commitment from the Town of Warsaw *not* to seek annexation of the USCS facility for at least eight years. Specifically, the annexation provision stated as follows:

> [Duplin County] shall have obtained, at no cost to [USCS], an agreement with the City of Warsaw, North Carolina, that it will not, for a period of at least eight years following Closing, annex the Premises to the City of Warsaw. [Duplin County] shall, in connection with such Agreement, provide to [USCS] a certification or opinion from the solicitor of the City of Warsaw that the individual or individuals executing such agreement have the authority to do so.

In 1997, the USCS facility was completed, and the Town of Warsaw began providing public sanitary sewer service to the USCS facility in Duplin County. USCS pays the Town of Warsaw for this service.

In 2012, the General Assembly enacted annexation reform legislation which limits a municipality's ability to annex an area without the consent of the owners of the affected property.

In 2013, the attorney for the Town of Warsaw sent a letter to USCS requesting that USCS "voluntarily annex to the Town of Warsaw." The letter also stated that the Town of Warsaw was under no obligation to continue providing sewerage service to the USCS facility since the facility was located outside of its corporate limits.

USCS responded, notifying the Town of Warsaw that it did not desire to seek voluntary annexation of its facility into the Town's corporate limits. (Agreeing to voluntary annexation would require USCS to incur approximately $88,000.00 in annual expenses in the form of property taxes paid to the Town.) The Town of Warsaw then responded, notifying USCS that it planned to cease providing sewerage service to the facility if USCS did not seek voluntary annexation.

In 2014, USCS commenced this declaratory judgment action. The trial court granted USCS's motion for a preliminary injunction, which restrained the Town of Warsaw from discontinuing sewerage service to the USCS facility.

In October 2014, following a hearing on the matter, the trial court entered an order dissolving the preliminary injunction, declaring that the Town of Warsaw was under no obligation to continue sewerage service to the USCS facility. Two days later, however, the trial court entered a temporary stay of this order pending appeal,

thereby allowing USCS to continue receiving sewerage service at its facility from the Town of Warsaw until further court order. USCS has timely appealed the trial court's order declaring that the Town of Warsaw has no obligation to continue providing sewerage service to the USCS facility.

## II. Standard of Review

This matter involves an action for declaratory relief, specifically seeking a court order which declares the rights of the parties concerning the provision of sewerage service by the Town to the USCS facility. Because this case is purely a question of law and a judgment will "settle and [] afford relief from uncertainty," we agree with the parties that a motion for declaratory judgment was properly heard in the trial court. *See* N.C. Gen. Stat. § 1-264 (2013). In the context of a declaratory judgment action, we review the trial court's findings of fact to determine whether they are supported by competent evidence, and we review the trial court's conclusions of law *de novo*. *Calhoun v. WHA Med. Clinic, PLLC*, 178 N.C. App. 585, 596-97, 632 S.E.2d 563, 571 (2006).

## III. Holding

We hold that the trial court correctly declared the rights of the parties. Specifically, we hold that the Town of Warsaw has the legal right to discontinue sewerage service to the USCS facility, *provided that* the Town is not unfairly discriminating between USCS and other non-residents similarly situated who

currently receive sewerage service.  Further, we hold that the Town of Warsaw has the legal right to condition continued service to USCS's facility on the voluntary annexation of the facility into the Town's corporate limits, again provided that the Town is not unfairly discriminating between USCS and other non-residents similarly situated who currently receive sewerage service.

There may be some sympathy in USCS's contention that the Town is cutting off service to coerce USCS to seek voluntary annexation and that the effect of the trial court's order is that USCS will incur great expense, either in the form of the payment of annual property taxes to the Town or in the form of costs incurred to arrange for an alternate source of sewerage service to its facility.  However, the town contends that it has been deprived of its ability to collect property taxes from a property owner who is enjoying Town services and that property taxes are a major source of the Town's total revenue.  Wherever the sympathies may lie, however, we reach our holding by following the direction of our Supreme Court declared in *Fulghum v. Selma*, a factually similar case from the middle of the last century.  In *Fulghum*, a property owner sued a municipality to enjoin the municipality from cutting off his water service, contending that the municipality had enacted an ordinance to coerce him to sell to the municipality certain water pipes he had built to supply water to non-residents.  *Fulghum v. Selma*, 238 N.C. 100, 76 S.E.2d 368 (1953).  The Court admitted that "there may be more than a modicum of truth in the assertion [regarding

the municipality's] coercive purpose [in enacting the ordinance.]" *Id.* However, the Court recognized the function of the courts: "Be that as it may, we must remember that *hard cases are the quicksands of the law*[1] and confine ourselves to our appointed task of declaring the legal rights of the parties." *Id.* at 103, 76 S.E.2d at 370 (emphasis added).

## IV. Analysis

Our General Assembly has authorized towns to own and operate water and sewer systems serving customers both *within and outside* their corporate limits. N.C. Gen. Stat. § 160A-312 (2014). And our Supreme Court has held that a town which chooses to provide such service *to its inhabitants* has a duty, generally, "*to its inhabitants* to serve without discrimination." *Dale v. Morganton*, 270 N.C. 567, 571, 155 S.E.2d 136, 141 (1967) (emphasis added). *See also In re Annexation Ordinance*, 255 N.C. 633, 646, 122 S.E.2d 690, 700 (1961) (holding that when a town supplies water to its inhabitants, it "owes the duty of equal service to consumers *within its corporate limits*" (emphasis added)).

---

[1] This metaphor has been used on a number of occasions by our Supreme Court. An early use by that Court was in an opinion penned by Richmond Mumford Pearson, who would, in 1868, become the first Chief Justice in our State ever elected by the people. Specifically, in his first year on the Supreme Court, Justice Pearson reversed a decision he had made earlier that year while serving as a superior court judge, stating, with great humility: "After the argument in this Court, and by the assistance of the great learning and long experience of the *Chief Justice* and my brother [Frederick] *Nash*, I have satisfied myself that I was wrong. 'Hard cases are the quick-sands of the law[;]' in other words, a judge sometimes looks so much at the apparent hardship of the case as to overlook the law." *Lea v. Johnson*, 31 N.C. 15, 18-19 (1848).

Our General Assembly has provided, however, that "in no case shall a [town] be held liable for damages to those *outside the corporate limits* for failure to furnish [water or sewer services]." N.C. Gen. Stat. § 160A-312(a) (emphasis added). In *Fulghum*, our Supreme Court held that a town has no obligation to furnish such services to non-residents. *Fulghum,* 238 N.C. at 104, 76 S.E.2d at 371 ("A municipality which operates its own water works is under no duty in the first instance to furnish water to persons outside its limits.").

When a town, however, seeks to provide water or sewer service *to non-residents*, our General Assembly has determined that said town may provide such services to non-residents "within reasonable limitations." N.C. Gen. Stat. § 160A-312(a). Our Supreme Court has described the nature of a town's authority in this respect as follows: "When a municipality exercises this discretionary power, it does not assume the obligations of a public service corporation toward nonresident consumers[,]" but rather, the town "*retains* the authority to specify the terms upon which nonresidents may obtain its water [or sewer service]." *Fulghum*, 238 N.C. at 104-05, 76 S.E.2d 371 (emphasis added).

Our Supreme Court has recognized that a town may obligate itself to non-residents *by contract* to provide services, stating:

> "The relationship existing between the [town and the non-resident who receives services] is contractual[.] The [town] has no legal right to compel residents living outside its corporate limits to avail themselves of the services[.] On

the other hand, in the absence of a contract providing otherwise, such residents are not in position to compel the [town] to make such services available to them."

*Atlantic Const. Co. v. City of Raleigh*, 230 N.C. 365, 369, 53 S.E.2d 165, 168 (1949). The Supreme Court, though, has further stated that if there is nothing in the contract or inherent in the surrounding circumstances to indicate that the contractual obligation was to run in perpetuity or for some ascertainable period, "the contract is terminable at will by either party on reasonable notice to the other." *Fulgham*, at 104, 76 S.E.2d at 370.

In the present case, the evidence does not disclose that the Town of Warsaw has any contractual obligation to supply services to the USCS facility in perpetuity or for some ascertainable period beyond the initial eight (8) years. Further, there is no indication that any principles of estoppel compel the Town of Warsaw to continue providing such service. Rather, USCS constructed its facility in the 1990s with full knowledge that its facility could be subject to annexation by the Town after eight years. As such, the Town of Warsaw "retains the authority to specify the terms" by which USCS and others similarly situated may continue to receive sewer services.

USCS relies on our Supreme Court's opinion in *Dale v. City of Morganton* to argue that a municipality cannot deny service because of some controversy with the consumer "which is not related to the service sought." *Dale*, 270 N.C. at 572, 155 S.E.2d at 141. However, this principle is not applicable in the present case, since

USCS is not an "inhabitant," *see id.* at 571, 155 S.E.2d at 141, and, unlike in *Dale*, the Town of Warsaw has no continuing duty (contractual or otherwise) to furnish services to USCS. Indeed, our Supreme Court has recognized a municipality's right to discriminate between its inhabitants and those customers outside its corporate limits by raising rates only on those existing customers outside the corporate limits. *See Fulghum*, *supra*.

While a municipality may discriminate between inhabitants as a class and non-inhabitants as a class in the provision of services, a municipality may not unlawfully discriminate *among non-inhabitants* in setting conditions for the provision of such services to said non-inhabitats. Here, though, the record demonstrates that the Town of Warsaw has *not* discriminated between USCS and its other commercial customers outside the Town's corporate limits. Rather, the record reflects that the Town made voluntary annexation a condition on all of them to continue receiving service.[2]

## V. Conclusion

The Town has no right to compel USCS to annex into its corporate limits under the current statutory scheme. However, USCS's right to oppose annexation does not

---

[2] USCS makes an argument that it has a vested property right in continued service and that, therefore, the Town of Warsaw's actions are in violation of USCS's due process rights. However, for the reasons stated in this opinion, there could have been no reasonable expectation on the part of USCS to have the right to sewerage service from the Town in perpetuity. Accordingly, we reject this argument.

create a right of USCS to continue receiving sewerage service from the Town in perpetuity. The Town has no contractual obligation to do so, nor does the Town have the obligation of a public service corporation to provide such service to USCS. *Id.*

AFFIRMED.

Judge STROUD concurs.

Judge HUNTER, JR., dissenting by separate opinion.

HUNTER, JR., Robert N., Judge, dissenting.

I agree with the majority that "hard cases are the quicksands of the law." *Fulghum v. Selma*, 238 N.C. 100, 103, 76 S.E.2d 268, 370 (1953). I dissent because I am not convinced it is proper for the Town of Warsaw to discontinue sewage services to USCS under the shadow of "voluntary" annexation.

North Carolina differentiates between the authority of a city operating a public utility within city limits and outside city limits. *See* N.C. Gen. Stat. § 160A-312 (2013). Generally, towns have no duty to furnish water and sewer services to persons outside the town limits. *Fulghum*, 238 N.C. at 104–105, 76 S.E.2d at 371. A town may, within its discretion, extend water and sewer services outside the city limits. *Id.* at 104–105, 76 S.E.2d at 371. However, this differentiation applies to the *initial decision* to extend a public utility outside city limits, not its operation once it is already in place.

"A public utility, *whether publicly or privately owned*, may not unreasonably discriminate in the distribution of its services or the establishment of rates." *Wall v. City of Durham*, 41 N.C. App. 649, 659, 255 S.E.2d 739, 745 (1979) (emphasis added). Reasonable classifications may be based upon cost of service, quantity received, time of use, etc. *Id.* If a city chooses to extend services outside city limits, it is reasonable to charge a different rate from that charged within the city limits. *Fulghum*, 238 N.C. at 104–105, 76 S.E.2d at 371. Our Courts have distinguished the

aforementioned reasonable classifications from unreasonable classifications, including singling out a person due to an unrelated controversy.

Therefore, I disagree with the majority's reading of *Fulghum*. The majority quotes *Fulghum* as stating that the town "*retains* the authority to specify the terms upon which nonresidents may obtain its water [or sewer service]. *Id.* at 104, 76 S.E.2d at 371 (emphasis in majority). However, a fuller reading paints a different picture: "[The town] retains the authority to specify the terms upon which nonresidents may obtain its water. *In exerting this authority, it may fix a different rate from that charged within the corporate limits.*" *Id.* at 104, 76 S.E.2d at 371 (emphasis added). Additionally, any terms must be reasonable.

"It is well settled that a *privately* owned supplier of electric power, or other public service, may not lawfully refuse its service because of a controversy with the applicant concerning a matter which is not related to the service sought." *Dale v. City of Morganton*, 270 N.C. 567, 572, 155 S.E.2d 136, 141 (1967) (emphasis added). Our Supreme Court adopted this principle after noting it was accepted in other jurisdictions. *E.g., Ten Broek v. Miller*, 240 Mich. 667, 216 N.W. 385 (1927), *Miller v. Roswell Gas & E. Co*, 22 N.M 594, 166 P. 1177 (1917), *Seaton Mountain Electric Light v. Idaho Springs*, 49 Colo. 122, 111 P. 834 (1910), *Hicks v. City of Monroe Utilities Commission*, 237 La. 848, 112 So.2d 635 (1959); *see also* 55 A.L.R. 771.

In *Dale v. City of Morganton* the Court followed this principle and expanded it by applying it to a city.[3]  In *Dale*, a house within the city limits became unfit for habitation and the city prohibited its occupancy. In response, the city refused to provide electricity to the house.  Our Supreme Court said:

> Whatever may be the right of the city of Morganton, in the exercise of its governmental power, to forbid the occupancy of the plaintiff's house as a human habitation, that is a matter collateral to the duty of the city to supply electric power for use in this structure.  A city may not deprive an inhabitant, otherwise entitled thereto, of light, water or other utility service as a means of compelling obedience to its police regulations, however valid and otherwise enforceable those regulations may be.

*Dale*, 270 N.C. 567, 572–573, 155 S.E.2d 136, 142 (1967).  Thus, a provider of a public utility, whether privately or publicly owned may not discontinue its services solely on the basis of a collateral dispute.  Additionally, the purpose given for termination of services may not be pretextual in nature.  In contrast, service may be discontinued for non-payment or another non-discriminatory purpose related to the provision of the utility.  *See Big Bear of North Carolina, Inc. v. City of High Point*, 294 N.C. 262, 268, 240 S.E.2d 422, 425 (1978).

The majority contends *Dale* is not applicable because USCS is not an "inhabitant."  However, the majority misreads *Dale* as explicitly distinguishing

---

[3] I disagree with the Town of Warsaw's reading of *Dale* because the Court took a principle previously only applied to private utilities and *expanded* it to include municipally owned utilities.  This requires an expansive reading of the principle instead of a narrow one as advocated by the town.

between persons inside and persons outside municipal limits. The Court uses the term "inhabitant" because the facts of that case involve a person living within city limits. The term "inhabitant" was merely used to refer to the plaintiff, not to exclude any non-inhabitants from the general principle.

In *Dale*, the Court required the city to address the issue at hand by following the procedural requirements required in the housing code to declare a house unfit for habitation. *Dale*, 270 N.C. at 576, 155 S.E.2d at 144. The Court reasoned "substantial compliance with these procedures is a condition precedent to the authority of the city to forbid the use of a dwelling house for human habitation." *Id.* Therefore, the city had to follow the requirements in place to address the housing code violation instead of attempting to address the issue collaterally.

Here, the Town of Warsaw did not have a duty to extend sewer services to USCS. However, the Town of Warsaw elected to extend a public utility to an area outside the city. As a result of that decision, the town cannot unreasonably discriminate or discontinue services for a reason unrelated to the provision of the utility itself.

The principle that a discontinuance of service cannot be related to a collateral matter is a generally recognized principle that applies to all providers of public utilities without distinguishing between whether they are private, public, or inside or outside of the city limits. Thus, while the Town may discontinue sewer service for

non-payment or other reasons related to the provision of sewer service, the town may not cut off service for a collateral dispute. The collateral annexation dispute is the only reason provided by the Town of Warsaw for discontinuing USCS's sanitary sewer services. I find no evidence in the record suggesting a proper purpose related to the provision of the utility for discontinuing the service.

As explained in *Dale*, another procedure exists to address the town's objective. While I understand annexation of the area including USCS would provide much needed tax revenue for the Town of Warsaw, the North Carolina General Statutes provide the proper procedures for annexation. The town must comply with these procedural requirements in order to annex the area including USCS. The town cannot condition the provision of a public utility on voluntary annexation. It is improper to attempt to address this collateral issue by discontinuing a public utility to USCS.

Finally, conditioning the continued provision of utilities on "voluntary annexation" contravenes the purpose behind the legislature's annexation legislation in 2011. "[I]t is essential for citizens to have an effective voice in annexations initiated by municipalities." N.C. Gen. Stat. § 160A-58.50(6) (2015). The majority sets a dangerous precedent. The continued provision of water, sewer, and electric services should not be used to induce USCS or any other person to seek annexation or face termination of those vital utilities.

*HUNTER, JR., Robert N., Judge., dissenting opinion.*

USCS also contends the Town of Warsaw violated its substantive due process rights. The North Carolina Supreme Court has long recognized:

> [I]f a case can be decided on either of two grounds, one involving a constitutional question, the other question of lesser moment, the latter alone will be determined. It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.

*State v. Lueders*, 214 N.C. 558, 560-561, 200 S.E. 22, 23 (1938). Our appellate courts exercise judicial restraint in such cases. *See Martin v. Thornburg*, 320 N.C. 533, 548, 359 S.E.2d 472, 481 (1987).

However, since the majority addresses USCS's constitutional claim, I will address this issue. I am persuaded by USCS's argument that they have a protected property right in the continued provision of sanitary sewer service and that the Town of Warsaw arbitrarily or capriciously deprived them of that property right. *See Browning-Ferris v. Wake County*, 905 F.Supp. 312, 317–318 (E.D.N.C. 1995).

"The inquiry as to whether a party has acquired a vested property right under the common law of North Carolina centers on the party's reliance on a permit, the exercise of good faith, and the incurring of substantial expenditures prior to the revocation of a permit or the amendment to an ordinance. *Id.* at 318 (citing *Simpson v. City of Charlotte*, 115 N.C. App. 51, 443 S.E.2d 772 (1994)). USCS meets all of those requirements and therefore had a vested property right in the continued sewer service.

*HUNTER, JR., Robert N., Judge., dissenting opinion.*

The next inquiry is whether that property right was deprived without due process of law. "The touchstone of due process is the protection of the individual against arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845, 118 S.Ct. 1708 (1998) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976 (1974)). In other words, the purpose behind substantive due process is to prevent government abuse of power by "employing it as an instrument of oppression." *Id.* at 846, 94 S.Ct. at 1716. Here, the government is wielding its power to achieve its objective, violating the very purpose of due process protections. The government is forcing USCS to submit to "voluntary" annexation or lose access to vital utilities. Such arbitrary and capricious government action is in violation of constitutionally protected due process rights. I would reverse the court below.